*774 Justice Thomas
delivered the opinion of the Court.
When a debtor files a Chapter 7 bankruptcy petition, all of the debtor’s assets become property of the bankruptcy estate, see 11 U. S. C. § 541, subject to the debtor’s right to reclaim certain property as “exempt,” § 522(0. The Bankruptcy Code specifies the types of property debtors may exempt, § 522(b), as well as the maximum value of the exemptions a debtor may claim in certain assets, § 522(d). Property a debtor claims as exempt will be excluded from the bankruptcy estate “[u]nless a party in interest” objects. §522(0.
This case presents an opportunity for us to resolve a disagreement among the Courts of Appeals about what constitutes a claim of exemption to which an interested party must object under §522(0- The issue is whether an interested party must object to a claimed exemption where, as here, the Code defines the property the debtor is authorized to exempt as an interest, the value of which may not exceed a certain dollar amount, in a particular type of asset, and the debtor’s schedule of exempt property accurately describes the asset and declares the “value of [the] claimed exemption” in that asset to be an amount within the limits that the Code prescribes. Fed. Rule Bkrtcy. Proc. Official Form 6, Schedule C (1991) (hereinafter Schedule C). We hold that, in cases such as this, an interested party need not object to an exemption claimed in this manner in order to preserve the estate’s ability to recover value in the asset beyond the dollar value the debtor expressly declared exempt.
I
Respondent Nadejda Reilly filed for Chapter 7 bankruptcy when her catering business failed. She supported her petition with various schedules and statements, two of which are relevant here: Schedule B, on which the Bankruptcy Rules require debtors to list their assets (most of which become property of the estate), and Schedule C, on which the Rules *775 require debtors to list the property they wish to reclaim as exempt. The assets Reilly listed on Schedule B included an itemized list of cooking and other kitchen equipment that she described as “business equipment,” and to which she assigned an estimated market value of $10,718. App. 40a, 49a-55a.
On Schedule C, Reilly claimed two exempt interests in this equipment pursuant to different sections of the Code. Reilly claimed a “tool[s] of the trade” exemption of $1,850 in the equipment under § 522(d)(6), which permits a debtor to exempt his “aggregate interest, not to exceed [$1,850] in value, in any implements, professional books, or tools, of [his] trade.” See also 69 Fed. Reg. 8482 (2004) (Table). And she claimed a miscellaneous exemption of $8,868 in the equipment under § 522(d)(5), which, at the time she filed for bankruptcy, permitted a debtor to take a “wildcard” exemption equal to the “debtor’s aggregate interest in any property, not to exceed” $10,225 “in value.”[1] See App. 58a. The total value of these claimed exemptions ($10,718) equaled the value Reilly separately listed on Schedules B and C as the equipment’s estimated market value, see id., at 49a, 58a.
Subject to exceptions not relevant here, the Federal Rules of Bankruptcy Procedure require interested parties to object to a debtor’s claimed exemptions within 30 days after the conclusion of the creditors’ meeting held pursuant to Rule 2003(a). See Fed. Rule Bkrtcy. Proc. 4003(b). If an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate *776 even if the exemption’s value exceeds what the Code permits. See, e. g., § 522(1); Taylor v. Freeland & Kronz, 503 U. S. 638, 642-643 (1992).
Petitioner William G. Schwab, the trustee of Reilly’s bankruptcy estate, did not object to Reilly’s claimed exemptions in her business equipment because the dollar value Reilly assigned each exemption fell within the limits that §§ 522(d)(5) and (6) prescribe. App. 163a. But because an appraisal revealed that the total market value of Reilly’s business equipment could be as much as $17,200,[2] Schwab moved the Bankruptcy Court for permission to auction the equipment so Reilly could receive the $10,718 she claimed as exempt, and the estate could distribute the equipment’s remaining value (approximately $6,500) to Reilly’s creditors. Id., at 141a-143a.
Reilly opposed Schwab’s motion. She argued that by equating on Schedule C the total value of the exemptions she claimed in the equipment with the equipment’s estimated market value, she had put Schwab and her creditors on notice that she intended to exempt the equipment’s full value, even if that amount turned out to be more than the dollar amount she declared, and more than the Code allowed. Id., at 165a. Citing § 522(1), Reilly asserted that because her Schedule C notified Schwab of her intent to exempt the full value of her business equipment, he was obliged to object if he wished to preserve the estate’s right to retain any value in the equipment in excess of the $10,718 she estimated. Because Schwab did not object within the time prescribed by Rule 4003(b), Reilly asserted that the estate forfeited its claim to such value. Id., at 165a. Reilly further informed the Bankruptcy Court that exempting her business equipment from the estate was so important to her that she would *777 dismiss her bankruptcy case if doing so was the only way to avoid the equipment’s sale at auction.[3]
The Bankruptcy Court denied both Schwab’s motion to auction the equipment and Reilly’s conditional motion to dismiss her case. See In re Reilly, 403 B. R. 336 (Bkrtcy. Ct. MD Pa. 2006). Schwab sought relief from the District Court, arguing that neither the Code nor Rule 4003(b) requires a trustee to object to a claimed exemption where the amount the debtor declares as the “value of [the debtor’s] claimed exemption” in certain property is an amount within the limits the Code prescribes. The District Court rejected Schwab’s argument, and the Court of Appeals affirmed. See In re Reilly, 534 F. 3d 173 (CA3 2008).
The Court of Appeals agreed with the Bankruptcy Court that by equating on Schedule C the total value of her exemptions in her business equipment with the equipment’s market value, Reilly “indicate[d] the intent” to exempt the equipment’s full value. Id., at 174. In reaching this conclusion, the Court of Appeals relied on our decision in Taylor:
“[W]e believe this case to be controlled by Taylor. Just as we perceive it was important to the Taylor Court that the debtor meant to exempt the full amount of the property by listing 'unknown’ as both the value of the property and the value of the exemption, it is important to us that Reilly valued the business equipment at *778 $10,718 and claimed an exemption in the same amount. Such an identical listing put Schwab on notice that Reilly intended to exempt the property fully.
“ ‘[A]n unstated premise’ of Taylor was ‘that a debtor who exempts the entire reported value of an asset is claiming the “full amount,” whatever it turns out to be.’” 534 F. 3d, at 178-179.
Relying on this “unstated premise,” the Court of Appeals held that Schwab’s failure to object to Reilly’s claimed exemptions entitled Reilly to the equivalent of an in-kind interest in her business equipment, even though the value of that exemption exceeded the amount that Reilly declared on Schedule C and the amount that the Code allowed her to withdraw from the bankruptcy estate. Ibid.
As noted, the Court of Appeals’ decision adds to disagreement among the Circuits about what constitutes a claim of exemption to which an interested party must object under §522(l).[4] We granted certiorari to resolve this conflict. See 556 U. S. 1207 (2009). We conclude that the Court of Appeals’ approach fails to account for the text of the relevant Code provisions and misinterprets our decision in Taylor. Accordingly, we reverse.
*779 II
The starting point for our analysis is the proper interpretation of Reilly’s Schedule C. If we read the Schedule Reilly’s way, she claimed exemptions in her business equipment that could exceed statutory limits, and thus claimed exemptions to which Schwab should have objected if he wished to enforce those limits for the benefit of the estate. If we read Schedule C Schwab’s way, Reilly claimed valid exemptions to which Schwab had no duty to object. The Court of Appeals construed Schedule C Reilly’s way and interpreted her claimed exemptions as improper, and therefore objectionable, even though their declared value was facially within the applicable Code limits. In so doing, the Court of Appeals held that trustees evaluating the validity of exemptions in cases like this cannot take a debtor’s claim at face value, and specifically cannot rely on the fact that the amount the debtor declares as the “value of [the] claimed exemption” is within statutory limits. Instead, the trustee’s duty to object turns on whether the interplay of various schedule entries supports an inference that the debtor “intended” to exempt a dollar value different than the one she wrote on the form. 534 F. 3d, at 178. This complicated view of the trustee’s statutory obligation, and the strained reading of Schedule C on which it rests, is inconsistent with the Code.[5]
The parties agree that this case is governed by § 522(0, which states that a Chapter 7 debtor must “file a list of property that the debtor claims as exempt under subsection (b) of this section,” and further states that “[u]nless a party in interest objects, the property claimed as exempt on such list is exempt.” The parties further agree that the “list” to which § 522(0 refers is the “list of property... claim[ed] as exempt” *780 currently known as “Schedule C.” See Schedule C.[6] The parties, like the Courts of Appeals, disagree about what information on Schedule C defines the “property claimed as exempt” for purposes of evaluating an exemption’s propriety under §522(Z). Reilly asserts that the “property claimed as. exempt” is defined by reference to all the information on Schedule C, including the estimated market value of each asset in which the debtor claims an exempt interest. Schwab and the United States as amicus curiae argue that the Code specifically defines the “property claimed as exempt” as an interest, the value of which may not exceed a certain dollar amount, in a particular asset, not as the asset itself. Accordingly, they argue that the value of the property claimed exempt, i. e., the value of the debtor’s exempt interest in the asset, should be judged on the value the debtor assigns the interest, not on the value the debtor assigns the asset. The point of disagreement is best illustrated by the relevant portion of Reilly’s Schedule C: *781 According to Reilly, Schwab was required to treat the estimate of market value she entered in column 4 as part of her claimed exemption in identifying the “property claimed as exempt” under §522(7). See Brief for Respondent 22-28. Relying on this premise, Reilly argues that where, as here, a debtor equates the total value of her claimed exemptions in a certain asset (column 3) with her estimate of the asset's market value (column 4), she establishes the “property claimed as exempt” as the full value of the asset, whatever that turns out to be. See ibid. Accordingly, Reilly argues that her Schedule C clearly put Schwab on notice that she “intended” to claim an exemption for the full value of her business equipment, and that Schwab’s failure to oppose the exemption in a timely manner placed the full value of the equipment outside the estate’s reach.
*780 Schedule C-Property Claimed as Exempt
Description of Property
Specify Law Providing Each Exemption
Value of Claimed Exemption
Current Market Value of Property Without Deducting Exemptions
Schedule B
Personal
Property
See attached 11 U. S. c. 1,850 10,718
list of business § 522(d)(6)
equipment. 11 U. S. C. 8,868
§ 522(d)(5)
*781 Schwab does not dispute that columns 3 and 4 apprised him that Reilly equated the total value of her claimed exemptions in the equipment ($1,850 plus $8,868) with the equipment’s market value ($10,718). He simply disagrees with Reilly that this “identical listing put [him] on notice that Reilly intended to exempt the property fully,” regardless of whether its value exceeded the exemption limits the Code prescribes. 534 F. 3d, at 178. Schwab and amicus United States instead contend that the Code defines the “property” Reilly claimed as exempt under §522(Z) as an “interest” whose value cannot exceed a certain dollar amount. Brief for Petitioner 20-26; Reply Brief for Petitioner 3-6; Brief for United States as Amicus Curiae 12-18. Construing Reilly’s Schedule C in light of this statutory definition, they contend that Reilly’s claimed exemption was facially unobjectionable because the “property claimed as exempt” (i e., two interests in her business equipment worth $8,868 and $1,850, respectively) is property Reilly was clearly entitled to exclude from her estate under the Code provisions she referenced in column 2. See supra, at 780 (citing §§ 522(d)(5) and (6)). Accordingly, Schwab and the United States conclude *782 that Schwab had no obligation to object to the exemption in order to preserve for the estate any value in Reilly’s business equipment beyond the total amount ($10,718) Reilly properly claimed as exempt.
We agree. The portion of § 522(0 that resolves this case is not, as Reilly asserts, the provision stating that the “property claimed as exempt on [Schedule C] is exempt” unless an interested party objects. Rather, it is the portion of §522(0 that defines the target of the objection, namely, the portion that says Schwab has a duty to object to the “list of property that the debtor claims as exempt under subsection (b).” (Emphasis added.) That subsection, § 522(b), does not define the “property claimed as exempt” by reference to the estimated market value on which Reilly and the Court of Appeals rely. Brief for Respondent 22-23; 534 F. 3d, at 178. Section 522(b) refers only to property defined in § 522(d), which in turn lists 12 categories of property that a debtor may claim as exempt. As we have recognized, most of these categories (and all of the categories applicable to Reilly’s exemptions) define the “property” a debtor may “clai[m] as exempt” as the debtor’s “interest” — up to a specified dollar amount — in the assets described in the category, not as the assets themselves. §§ 522(d)(5)-(6); see also §§ 522(d)(1) — (4), (8); Rousey v. Jacoway, 544 U. S. 320, 325 (2005); Owen v. Owen, 500 U. S. 305, 310 (1991). Viewing Reilly’s form entries in light of this definition, we agree with Schwab and the United States that Schwab had no duty to object to the property Reilly claimed as exempt (two interests in her business equipment worth $1,850 and $8,868) because the stated value of each interest, and thus of the “property claimed as exempt,” was within the limits the Code allows.[7]
*783 Reilly’s contrary view of Schwab’s obligations under §522(Z) does not withstand scrutiny because it defines the target of a trustee’s objection — the “property claimed as exempt” — based on language in Schedule C and dictionary definitions of “property,” see Brief for Respondent 24-25, 40-41, that the definition in the Code itself overrides.* *[8] Although we may look to dictionaries and the Bankruptcy Rules to determine the meaning of words the Code does not define, see, e. g., Rousey, supra, at 330, the Code’s definition of the “property claimed as exempt” in this case is clear. As noted above, §§ 522(d)(5) and (6) define the “property claimed as exempt” as an “interest” in Reilly’s business equipment, not as the equipment per se. Sections 522(d)(5) and (6) further and plainly state that claims to exempt such interests are statutorily permissible, and thus unobjectionable, if the value of the claimed interest is below a particular dollar amount.[9] That is the case here, and Schwab was entitled *784 to rely upon these provisions in evaluating whether Reilly’s exemptions were objectionable under the Code. See Lamie v. United States Trustee, 540 U. S. 526, 534 (2004); Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U. S. 1, 6 (2000). The Court of Appeals’ contrary holding not only fails to account for the Code’s definition of the “property claimed as exempt.” It also fails to account for the provisions in § 522(d) that permit debtors to exempt certain property in kind or in full regardless of value. See, e. g., §§ 522(d)(9) (professionally prescribed health aids), (10)(C) (disability benefits), (7) (unmatured life insurance contracts). We decline to construe Reilly’s claimed exemptions in a manner that elides the distinction between these provisions and provisions such as §§ 522(d)(5) and (6), see, e. g., Duncan v. Walker, 533 U. S. 167, 174 (2001), particularly based upon an entry on Schedule C — Reilly’s estimate of her equipment’s market value — to which the Code does not refer in defining the “property claimed as exempt.”[10]
*785 For all of these reasons, we conclude that Schwab was entitled to evaluate the propriety of the claimed exemptions based on three, and only three, entries on Reilly’s Schedule C: the description of the business equipment in which Reilly claimed the exempt interests; the Code provisions governing the claimed exemptions; and the amounts Reilly listed in the column titled “value of claimed exemption.” In reaching this conclusion, we do not render the market value estimate on Reilly’s Schedule C superfluous. We simply confine the estimate to its proper role: aiding the trustee in administering the estate by helping him identify assets that may have value beyond the dollar amount the debtor claims as exempt, or whose full value may not be available for exemption because a portion of the interest is, for example, encumbered by an unavoidable lien. See, e. g., 3 W. Norton & W. Norton, Bankruptcy Law and Practice § 56:7 (3d ed. 2009); Brief for United States as Amicus Curiae 16; Dept, of Justice, Executive Office for U. S. Trustees, Handbook for Chapter 7 Trustees, p. 8-1 (2005), http://www.justice.gov/ust/eo/private_ trustee / library /chapter07 / docs / 7handbookl008 / Ch7_ Handbookpdf (as visited June 14, 2010, and available in Clerk of Court’s case file). As noted, most assets become property of the estate upon commencement of a bankruptcy case, see 11 U. S. C. § 541, and exemptions represent the debtor’s attempt to reclaim those assets or, more often, certain interests in those assets, to the creditors’ detriment. Accordingly, it is at least useful for a trustee to be able to compare the value of the claimed exemption (which typically represents the debtor’s interest in a particular asset) with *786 the asset’s estimated market value (which belongs to the estate subject to any valid exemption) without having to consult separate schedules.[11]
Our interpretation of Schwab’s statutory obligations is not only consistent with the governing Code provisions; it is also consistent with the historical treatment of bankruptcy exemptions. Congress has permitted debtors to exempt certain property from their bankruptcy estates for more than two centuries. See Act of Apr. 4, 1800, ch. 19, § 5, 2 Stat. *787 23.[12] Throughout these periods, debtors have validly exempted property based on forms that required the debtor to list the value of a claimed exemption without also estimating the market value of the asset in which the debtor claimed the exempt interest. See Brief for Respondent 46, n. 7 (citing Sup. Ct. Bkrtcy. Form 20 (1877)).[13] Indeed, it was not until 1991 that Schedule B-4 was redesignated as Schedule C and amended to require the estimate of market value on which Reilly so heavily relies. See Schedule C. This amendment was not occasioned by legislative changes that altered the Code’s definition of “the property claimed as exempt” in this case as an “interest,” not to exceed a certain dollar amount, in Reilly’s business equipment.[14] Accordingly, we agree with Schwab and the United States that this recent amendment to the exemption form does not compel Reilly’s view of Schwab’s statutory obligations, or render the claimed exemptions in this ease objectionable under the *788 Code. See Reply Brief for Petitioner 9-11; Brief for United States as Amicus Curiae 16-17.[15]
III
The Court of Appeals erred in holding that our decision in Taylor dictates a contrary conclusion. See 534 F. 3d, at 178. Taylor does not rest on what the debtor “meant” to exempt. 534 F. 3d, at 178. Rather, Taylor applies to the face of a debtor’s claimed exemption the Code provisions that compel reversal here.
The debtor in Taylor, like the debtor here, filed a schedule of exemptions with the Bankruptcy Court on which the debtor described the property subject to the claimed exemption, identified the Code provision supporting the exemption, and listed the dollar value of the exemption. Critically, however, the debtor in Taylor did not, like the debtor here, state the value of the claimed exemption as a specific dollar amount at or below the limits the Code allows. Instead, the debtor in Taylor listed the value of the exemption itself as “$ unknown”:
*789 Schedule B-4. -Property Claimed Exempt
Type of Property
Location, Description, and, So Far as Relevant to the Claim of Exemption, Present Use of Property
Specify the Statute Creating the Exemption
Value Claimed Exempt
Proceeds from lawsuit
Winn v. TWA Claim for lost wages
11 U. S. C. 522(b)(d)

unknown

The interested parties in Taylor agreed that this entry rendered the debtor’s claimed exemption objectionable on its face because the exemption concerned an asset (lawsuit proceeds) that the Code did not permit the debtor to exempt beyond a specific dollar amount. See 503 U. S., at 642. Accordingly, although this case and Taylor both concern the consequences of a trustee’s failure to object to a claimed exemption within the time specified by Rule 4003, the question arose in Taylor on starkly different facts. In Taylor, the question concerned a trustee’s obligation to object to the debtor’s entry of a “value claimed exempt” that was not plainly within the limits the Code allows. In this case, the opposite is true. The amounts Reilly listed in the Schedule C column titled “Value of Claimed Exemption” are facially within the limits the Code prescribes and raise no warning flags that warranted an objection.[16] See supra, at 780.
*790 Taylor supports this conclusion. In holding otherwise, the Court of Appeals focused on what it described as Taylor’s “'unstated premise”’ that '"a debtor who exempts the entire reported value of an asset is claiming the “full amount,” whatever it turns out to be.’” 534 F. 3d, at 179. But Taylor does not rest on this premise. It establishes and applies the straightforward proposition that an interested party must object to a claimed exemption if the amount the debtor lists as the “value claimed exempt” is not within statutory limits, a test the value ($ unknown) in Taylor failed, and the values ($8,868 and $1,850) in this ease pass.
We adhere to this test. Doing otherwise would not only depart from Taylor and ignore the presumption that parties act lawfully and with knowledge of the law, cf. United States v. Budd, 144 U. S. 154, 163 (1892); it would also require us to expand the statutory definition of “property claimed as exempt” and the universe of information an interested party must consider in evaluating the validity of a claimed exemption. Even if the Code allowed such expansions, they would be ill advised. As evidenced by the differences between Reilly’s Schedule C and the schedule in Taylor, preprinted bankruptcy schedules change over time. Basing the definition of the “property claimed as exempt,” and thus an interested party’s obligation to object under § 522(0, on inferences that party must draw from evolving forms, rather than on the facial validity of the value the debtor assigns the “property claimed as exempt” as defined by the Code, would undermine the predictability the statute is designed to provide.[17] For all of these reasons, we take Reilly’s exemptions *791 at face value and find them unobjectionable under the Code, so the objection deadline we enforced in Taylor is inapplicable here.
IV
In a final effort to defend the Court of Appeals’ judgment, Reilly asserts that her approach to § 522(Z) is necessary to vindicate the Code’s goal of giving debtors a fresh start, and to further its policy of discouraging trustees and creditors from sleeping on their rights. See Brief for Respondent 21, 55-68. Although none of Reilly’s policy arguments can overcome the Code provisions or the aspects of Taylor that govern this case, our decision fully accords with all of the policies she identifies. We agree that “exemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a 'fresh start.’” Brief for Respondent 21 (quoting Rousey, 544 U. S., at 325); see Marrama v. Citizens Bank of Mass., 549 U. S. 365, 367 (2007). We disagree that this policy required Schwab to object to a facially valid claim of exemption on pain of forfeiting his ability to preserve for the estate any value in Reilly’s business equipment beyond the value of the interest she declared exempt. This approach threatens to convert a fresh start into a free pass.
As we emphasized in Rousey, “[t]o help the debtor obtain a fresh start, the Bankruptcy Code permits him to withdraw from the estate certain interests in property, such as his car or home, up to certain values.” 544 U. S., at 325 (emphasis added). The Code limits exemptions in this fashion because every asset the Code permits a debtor to withdraw from the estate is an asset that is not available to his creditors. See § 522(b)(1). Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors, and it is not for us to *792 alter this balance by requiring trustees to object to claimed exemptions based on form entries beyond those that govern an exemption’s validity under the Code. See Lamie, 540 U. S., at 534, 538; Hartford, 530 U. S., at 6; United States v. Locke, 471 U. S. 84, 95 (1985).
Reilly nonetheless contends that our approach creates perverse incentives for trustees and creditors to sleep on their rights. See Brief for Respondent 64, n. 10, 67-69. Again, we disagree. Where a debtor intends to exempt nothing more than an interest worth a specified dollar amount in an asset that is not subject to an unlimited or in-kind exemption under the Code, our approach will ensure clear and efficient resolution of competing claims to the asset’s value. If an interested party does not object to the claimed interest by the time the Rule 4003 period expires, title to the asset will remain with the estate pursuant to § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption. If an interested party timely objects, the court will rule on the objection and, if it is improper, allow the debtor to make appropriate adjustments.[18]
Where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as *793 “full fair market value (FMV)” or “100% of FMV.”[19] Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the' asset beyond relevant statutory limits.[20] If the trustee fails to object, or if the trustee objects and the objection is overruled, the debtor will be entitled to exclude the full value of the asset. If the trustee objects and the objection is sustained, the debtor will be required either to forfeit the portion of the exemption that exceeds the statutory allowance, or to revise other exemptions or arrangements with her creditors to permit the exemption. See Fed. Rule Bkrtcy. Proc. 1009(a). Either re- *794 suit will facilitate the expeditious and final disposition of assets, and thus enable the debtor (and the debtor’s creditors) to achieve a fresh start free of the finality and clouded-title concerns Reilly describes. See Brief for Respondent 57-59 (arguing that “[u]nder [Schwab’s] interpretation of Rule 4003(b), a debtor would never have the certainty of knowing whether or not he or she may keep her exempted property until the case had ended”); id., at 66.[21]
For all of these reasons, the policy considerations Reilly cites support our approach. Where, as here, a debtor accurately describes an asset subject to an exempt interest and on Schedule C declares the “value of [the] claimed exemption” as a dollar amount within the range the Code allows, interested parties are entitled to rely upon that value as evidence of the claim’s validity. Accordingly, we hold that Schwab was not required to object to Reilly’s claimed exemptions in her business equipment in order to preserve the estate’s right to retain any value in the equipment beyond the *795 value of the exempt interest. In reaching this conclusion, we express no judgment on the merits of, and do not foreclose the courts from entertaining on remand, procedural or other measures that may allow Reilly to avoid auction of her business equipment.
* * *
We reverse the judgment of the Court of Appeals for the Third Circuit and remand this case for further proceedings consistent with this opinion.

It is so ordered.

 The 1994 version of 11 U. S. C. § 522(d)(5) allowed debtors to exempt an “aggregate interest in any property, not to exceed in value $800 plus up to $7,500 of any unused amount of the [homestead or burial plot] exemption provided under [§ 522(d)(1)].” In 2004, pursuant to § 104(b)(2), the Judicial Conference of the United States published notice that § 522(d)(5) would impose the $975 and $9,250 ($10,225 total) limits that governed Reilly’s April 2005 petition. See 69 Fed. Reg. 8482 (Table). In 2007 and 2010 the limits were again increased. See 72 id., at 7082 (Table); 75 id., at 8748 (Table).

 Schwab concedes that the appraisal occurred before Rule 4003(b)’s 30-day window for objecting to the claimed exemptions had passed. See Brief for Petitioner 15.

 Reilly’s desire to avoid the equipment’s auction is understandable because the equipment, which Reilly’s parents purchased for her despite their own financial difficulties, has “‘extraordinary sentimental value.’” Brief for Respondent 5 (quoting App. 152a-153a). But the sentimental value of the property cannot drive our decision in this case, because sentimental value is not a basis for construing the Bankruptcy Code. Because the Code imposes limits on exemptions, many debtors who seek to take advantage of the Code are, no doubt, put to the similarly difficult choice of parting with property of “extraordinary sentimental value.” Id., at 152a-153a; see infra, at 791-794.

 Compare In re Williams, 104 F. 3d 688, 690 (CA4 1997) (holding that interested parties have no duty to object to a claimed exemption where the dollar amount the debtor assigns the exemption is facially within the range the Code allows for the type of property in issue); In re Wick, 276 F. 3d 412 (CA8 2002) (employing reasoning similar to Williams, but stopping short of articulating a clear rule), with In re Green, 31 F. 3d 1098, 1100 (CA11 1994) (“[A] debtor who exempts the entire reported value of an asset is claiming the [asset’s] ‘full amount,’ whatever it turns out to be”); In re Anderson, 377 B. R. 865 (Bkrtcy. App. Panel CA6 2007) (similar); In re Barroso-Herrans, 524 F. 3d 341, 344 (CA1 2008) (focusing on “how a reasonable trustee would have understood the filings under the circumstances”); and In re Hyman, 967 F. 2d 1316 (CA9 1992) (applying an analogous totality-of-the-drcumstances approach).

 The forms, rules, treatise excerpts, and poliey considerations on which the dissent relies, see post, at 798-810 (opinion of Ginsburg, J.), must be read in light of the Bankruptcy Code provisions that govern this case, and must yield to those provisions in the event of conflict.

 Bankruptcy Rule 4003 specifies the time within which the debtor must file Schedule C, as well as the time within which interested parties must object to the exemptions claimed thereon.

 Schwab’s statutory duty to object to the exemptions in this case turns solely on whether the value of the property claimed as exempt exceeds statutory limits because the parties agree that Schwab had no cause to object to Reilly’s attempt to claim exemptions in the equipment at issue, *783 or to the applicability of the Code provisions Reilly cited in support of her exemptions.

 The dissent’s approach suffers from a similar flaw, and misstates our holding in critiquing it. See post, at 795-796 (asserting that by refusing to subject “challenges to the debtor’s valuation of exemptible assets” to the “30-day” objection period in Federal Rule of Bankruptcy Procedure 4003(b), we “drastically reduc[e] Rule 4003’s governance”). Challenges to the valuation of what the dissent terms “exemptible assets” are not covered by Rule 4003(b) in the first place. Post, at 795. Challenges to “property claimed as exempt” as defined by the Code are covered by Rule 4003(b), but in this case that property is not objectionable, so the lack of an objection did not violate the Rule. Our holding is confined to this point. Accordingly, our holding does not “reduele) Rule 4003’s governance,” nor does it express any judgment on what constrains objections to the type of “market value” estimates, post, at 796, the dissent equates with the dollar value a debtor assigns the “property claimed as exempt” as defined by the Code, see, e. g., post, at 795-796, 800.

 Treating such claims as unobjectionable is consistent with our precedents. See, e. g., Rousey, 544 U. S., at 325. It also accords with bankruptcy court decisions holding that where, as here, a debtor claims an exemption pursuant to provisions that (like § 522(d)(6)) permit the debtor to exclude from the estate only an “interest” in certain property, the *784 “property” that becomes exempt absent objection, § 522(1), is only the “partial interest” claimed as exempt and not “the asset as a whole,” e. g., In re Soost, 262 B. R. 68, 72 (Bkrtey. App. Panel CA8 2001).

 The dissent’s approach does not avoid these concerns. The dissent insists that “a debtor’s market valuation [of the equipment in which she claims an exempt interest] is an essential factor in determining the nature of the ‘interest’ [the] debtor lists as exempt” (and thus in determining whether the claimed exemption is objectionable), because “without comparing [the debtor’s] market valuation of the equipment to the value of her claimed exemption” the trustee “could not comprehend whether [the debtor] claimed a monetary or an in-kind ‘interest’ in [the] equipment.” Post, at 803, n. 9. This argument overlooks the fact that there is another way the trustee could discern from the “face of the debtor’s filings,” post, at 801, n. 6, whether the debtor claimed as exempt a “monetary or an in-kind “interest’ in” her equipment, post, at 803, n. 9: The trustee could simply consult the Code provisions the debtor listed as governing the exemption in question. Here, those provisions, §§ 522(d)(5) and (6), expressly describe the exempt interest as an “interest” “not to exceed” a specified dollar amount. Accordingly, it was entirely appropriate for Schwab to view Reilly’s schedule entries as exempting an interest in her business equipment in the (declared and unobjectionable) amounts of $1,850 and $8,868. Viewing the entries otherwise, i. e., as exempting the *785 equipment in kind or in full no matter what its dollar value, would unnecessarily treat the exemption as violating the limits imposed by the Code provisions that govern it, as well as ignore the distinction between those provisions and the provisions that “authoriz[e] reclamation of the property in full without any cap on value,” post, at 801, n. 5. And it would do all of this based on information (identical dollar amounts in columns 3 and 4 of Schedule C) that Schwab and one of his amici say often result from a default setting in commercial bankruptcy software. See Reply Brief for Petitioner 15; Brief for National Association of Bankruptcy Trustees 13, n. 15.

 The dissent’s argument that the estimate plays a greater role, and is “vital,” post, at 801, to determining whether the value a debtor assigns the “property claimed as exempt” (here, an interest in certain business equipment) is objectionable, see post, at 801-802, lacks statutory support because the governing Code provisions phrase the exemption limit as a simple dollar amount. The dissent’s view, see post, at 800-803, might be plausible if the Code stated that the debtor could exempt an interest in her equipment “not to exeeed” a certain percentage of the equipment’s market value, because then it might be necessary to “comparte] [the debt- or’s] market valuation of the equipment to the value of her claimed exemption” to determine the exemption’s propriety. Post, at 803, n. 9. But the Code does not phrase the exemption cap in such terms. Moreover, even accepting that the equivalent Schedule C entries the dissent relies upon represent a claim to exempt an asset’s full value, the dissent does not explain why this equivalence precludes a trustee from relying on the dollar amount the debtor expressly assigns both entries. According to the dissent, a trustee faced with such entries should assume not only that the debtor reclaims from the estate what she believes to be the full value of an asset in which the Code allows her to exempt an interest “not to exceed” a certain dollar amount, e. g., § 522(d)(6), but also that the debtor would continue to claim the asset’s full value as exempt even if that value exceeds her estimate to a point that would cause her claim to violate the Code. The schedule entries themselves do not compel this assumption, and the Code provisions they invoke undercut it. The evidence that the debtor in this case would have chosen that course is external to her exemption schedule. See, e. g., supra, at 776-777 (citing statements in Reilly’s motion to dismiss); post, at 798, n. 3, 800 (same). And in the ordinary case, particularly if the equivalent entries the dissent relies upon result from a software default, see n. 10, supra, there is no reason to assume that a debtor would want to violate the Code or jeopardize other exemptions if her market value estimate turns out to be wrong.

 See also Act of Aug. 19,1841, ch. 9, §3, 5 Stat. 442; Act of Mar. 2,1867, ch. 176, § 11, 14 Stat. 521, amended by Act of June 22, 1874, 18 Stat., pt. 3, p. 182; Bankruptcy Act of July 1, 1898, ch. 541, §6, 30 Stat. 548, 11 U. S. C. §24 (1926 ed.); Chandler Act, ch. 575, § 1, 52 Stat. 847,11 U. S. C. §24 (1934 ed., Supp. IV); §522 (1976 ed., Supp. II); §522 (2000 ed. and Supp. V).

 See also General Orders and Forms in Bankruptcy, Official Form 1, Schedule B (5) (1898); Fed. Rule Bkrtcy. Proe. Official Form 6, Schedule B-4 (1971).

 The precise reason for the amendment is unclear. See Communication from The Chief Justice of the United States Transmitting Amendments to the Federal Rules of Bankruptcy Procedure Prescribed by the Court, Pursuant to 28 U. S. C. 2075, H. R. Doc. No. 102-80, p. 558, reprinted in 11 Bankruptcy Rules Documentary History (1990-1991) (referencing only the fact of the amendment). It may have been to consolidate and reconcile the separate forms debtors were previously required to file in Chapter 7 and Chapter 13 eases, see, e. g., In re Beshirs, 236 B. R. 42, 46-47 (Bkrtcy. Ct. Kan. 1999), or simply to make it easier for trustees to evaluate whether certain assets were viable candidates for liquidation. Whatever the case, it did not result from statutory changes to the Code provisions that govern this dispute.

 Because the Code provisions we rely upon to resolve this case do not obligate trustees to object under Rule 4003(b) to a debtor’s estimate of the market value of an asset in which the debtor claims an exempt interest, our analysis does not depend on whether the schedule of “property claimed as exempt” (currently Schedule C) calls for such an estimate or not. We engage the point only because Reilly suggests that the 1991 schedule revisions requiring debtors to provide such an estimate on the schedule of “property claimed as exempt” means that the estimate must be viewed as part of the exemption and is therefore subject to the Rule. See Brief for Respondent 40-41. The dissent ranges far beyond even this unavailing argument in suggesting that the market value estimate served as “an essential factor in determining the nature of the ‘interest’ a debtor lists as exempt,” post, at 803, n. 9, even before 1991 when that estimate did not appear on the schedule of “property claimed as exempt” (former Schedule B-4), but rather appeared on former “Schedule B-2,” post, at 801, n. 6, which merely listed the debtor’s “personal property” as of the date of the petition filing. Interim Fed. Rule Bkrtcy. Proc. Official Form 6, Schedules B-2, B-4 (1979).

 See, e. g., Barroso-Herrans, 524 F. 3d, at 345 (explaining that Schedule C entries listing the value of a claimed exemption as “unknown,” “to be determined,” or “100%” are “‘red flags to trustees and creditors,’ and therefore put them on notice that if they do not object, the whole value of the asset — whatever it might later turn out to be — will be exempt” (quoting 1 Collier on Bankruptcy ¶ 8.06[l][c][ii] (rev. 15th ed. 2007); citation and some internal quotation marks omitted)). The dissent concedes that a debtor’s exemption schedule “must give notice sufficient to cue the trustee that an objection may be in order,” and rightly observes that the sufficiency of a particular cue, or “ ‘warning flag,’ ” may lie “in the eye of the beholder.” Post, at 808. In this case, however, the Code itself breaks the tie between what might otherwise be two equally tenable views.

 Reilly insists that our conclusion should nonetheless be avoided because “procedures that burden the debtor’s exemption entitlements, like those that impair a debtor’s discharge generally, are to be construed narrowly.” Brief for Respondent 33 (citing Kawaauhau v. Geiger, 523 U. S. 57, 62 (1998)). This argument misses the mark for two reasons. First, the only burdens our conclusion imposes are burdens the Code itself prescribes, specifically, the burdens the Code places on debtors to state their claimed exemptions accurately and to conform such claims to statutory limits. Second, and in any event, Geiger and the other cases Reilly cites *791 emphasize in the discharge context the importance of limiting exceptions to discharge to “those plainly expressed,” a principle that supports our approach here. Ibid, (internal quotation marks omitted).

 We disagree that Reilly’s approach to exemptions would more efficiently dispose of competing claims to the asset. On Reilly’s view, a trustee would be encouraged (if not obliged) to object to claims to exempt a specific dollar amount of interest in an asset whenever the value of the exempt interest equaled the debtor’s estimate of the asset’s market value. Where the debtor genuinely intended to claim nothing more than the face value of the exempt interest (which is rational if a debtor wishes to ensure that his aggregate exemptions remain within statutory limits), such an approach would engender needless objections and litigation, particularly if the equation that would precipitate the objection often results from, a default software entry. See Reply Brief for Petitioner 15; Brief for National Association of Bankruptcy Trustees as Amicus Curiae 13, n. 15.

 The dissent’s observations about the poor fit between our admonition and a form entry calling for a dollar amount, see post, at 808-809, simply reflect the tension between the Code’s definition of “property claimed as exempt” (i an interest, not to exceed a certain dollar amount, in Reilly’s business equipment) and Reilly’s attempt to convert into a dollar value an improper claim to exempt the equipment itself, “‘whatever [its value] turns out to be,’ ” In re Reilly, 534 F. 3d 173, 178-179 (CA3 2008). As the dissent concedes, “[s]ection 522(d) catalogs exemptions of two types.” Post, at 800-801, n. 5. “Most exemptions — and all of those Reilly invoked — place a monetary limit on the value of the property the debtor may reclaim,” and such exemptions are distinct from those made pursuant to Code provisions that “authoriz[e] reclamation of the property in full without any cap on value.” Ibid. Nothing about Reilly’s schedule entries establishes that Schwab should have treated Reilly’s claim for $10,718, an unobjectionable amount under the Code provisions she expressly invoked, as an objectionable claim for thousands of dollars more than those-provisions allow, or as a claim for an uncapped exemption under Code provisions she did not invoke and the dissent admits are “not at issue here.” Ibid.

 A trustee will not always file an objection. As the United States observes, Schwab did not do so in this case with respect to certain assets (perishable foodstuffs from Reilly’s commercial kitchen) that could not be readily sold. See Brief for United States as Amicus Curiae 28, n. 7 (explaining that Schwab could have objected to Reilly’s claim of a wildcard exemption for an interest in the food totaling $2,306 because this claim, combined with her wildcard claims for an interest of $8,868 in her business equipment and interests totaling $26 in her bank accounts, placed the total value of the interests she claimed exempt under the wildcard provision $975 above then-applicable limits).

 Reilly’s clouded-title argument arises only if one accepts her flawed conception of the exemptions in this case. According to Reilly, “once the thirty-day deadline passed without objection” to her claim, she was “entitled to know that she would emerge from bankruptcy with her cooking equipment intact.” Brief for Respondent 57. There are two problems with this argument. First, it assumes that the property she claimed as exempt was the full value of the equipment. That assumption is incorrect for the reasons we explain. Second, her argument assumes that a claim to exempt the full value of the equipment would, if unopposed, entitle her to the equipment itself as opposed to a payment equal to the equipment’s full value. That assumption is at least questionable. Section 541 is clear that title to the equipment passed to Reilly’s estate at the commencement of her case, and §§ 522(d)(5) and (6) are equally clear that her reclamation right is limited to exempting an interest in the equipment, not the equipment itself Accordingly, it is far from obvious that the Code would “entitle” Reilly to clear title in the equipment even if she claimed as exempt a “full” or “100%” interest in it (which she did not). Of course, it is likely that a trustee who fails to object to such a claim would have little incentive to do anything but pass title in the asset to the debtor. But that does not establish the statutory entitlement Reilly claims.