In re Stephen John WICZEK and
Donna Lorraine Wiczek,
Debtors.

No. BKY 10–51280.

United States Bankruptcy Court,
D. Minnesota.

June 16, 2011.

Gregory R. Anderson, Anderson, Larson, Hanson & Saunder, Willmar, MN, for Debtors.

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTORS' AMENDED CLAIM OF EXEMPTION

GREGORY F. KISHEL, Chief Judge.

This Chapter 7 case came before the Court on May 4, 2011, on the Trustee's objection to the Debtors' amended claim of exemption in certain assets. Trustee Terri A. Running appeared on behalf of the

bankruptcy estate. Thomas J. Flynn appeared on behalf of the Debtors. On the record made by the parties, and there being no need for a further hearing, the objection is sustained.

The Debtors filed for bankruptcy under Chapter 7 on September 14, 2010. At that time, the Debtors held interests in several business enterprises: Nisswa Marine, Inc. (a retail boat dealership then in Chapter 11, since emerged after obtaining confirmation of a plan of reorganization); Falls Flag Source (a retail dealer of flags at the Minnesota State Fair and elsewhere, an unincorporated proprietorship); Gull Lake Properties, LLC (nature of business not disclosed in the record); and Nisswa Properties, LLC (nature of business not disclosed in the record).

In their initial bankruptcy Schedules B and C, the Debtors recited their respective ownership of these interests, the associated values, and their claimed exemptions under 11 U.S.C. § 522(d)(5), as follows:

*Stephen Wiczek:*

| Entity | Description of Property (per Schedules B and C) | Value of Claimed Exemption (per Schedule C) | Current Value of Property Without Deducting Exemptions (per Schedule C) |
| --- | --- | --- | --- |
| Nisswa Marine, Inc. | "50% share ... no equity" | "100%" | "0.00" |
| Nisswa Properties, LLC | "35% share ... worthless" | "100%" | "0.00" |
| Gull Lake Properties, LLC | "30% share ... worthless" | "100%" | "0.00" |
| Stephen Wiczek and Donna Wiczek, d/b/a Falls Flag Source | "Sole Proprieto [sic]" [1] | "100%" | "0.00" |

*Donna Wiczek:*

| Entity | Description of Property (per Schedules B and C) | Value of Claimed Exemption (per Schedule C) | Current Value of Property Without Deducting Exemptions (per Schedule C) |
| --- | --- | --- | --- |
| Nisswa Marine, Inc. | "50% share ... no equity" | "100%" | "0.00" |
| Nisswa Properties, LLC | "35% share ... worthless" | "100%" | "0.00" |

In November, 2010, the Trustee timely objected to these claims of exemption on the following ground:

> The Trustee objects ... to the extent the claimed exemptions exceed the amount remaining (if any) of the amount available to the [Debtors] under 11 U.S.C. § 522(d)(5). The [Debtors'] claimed exemptions in the above referenced assets should be limited to the amount remaining available to [them] under 11 U.S.C. § 522(d)(5).

The Debtors responded via a standardized CM/ECF "notice event entry" reciting that the Debtors had decided not to oppose the Trustee on the objection. On December 2, 2010, the Court entered the Trustee's proposed order on the objection. As to each Debtor's interest in the business enterprises, its text provided that the

---

**1.** In Schedule B's column to designate "Husband, Wife, Joint, or Community" as the owner for this asset, the Debtors noted "H."

"claimed exemptions in the following assets is [sic] limited to the amount remaining available to him [or her] (if any) under 11 U.S.C. § 522(d)(5)."

In the early spring of 2011, the Debtors retained successor counsel. On March 1, 2011, that attorney filed amended Schedules B and C on their behalf. As to the Debtors' interests in the several business enterprises,[2] the only amendment was in the column for the "Value of Claimed Exemption" on Schedule C. Now, as to each such entry, it read "100% *of FMV*" (emphasis added). The recitation in the column for "Current Value of Property" remained the same, "0.00."

The Trustee timely objected to this amended claim of exemption. She recites the basis of her objection as follows:

> [T]he dollar amounts of the claimed exemptions are already set at the maximum amount available to the debtors under the federal bankruptcy exemptions by virtue of the court's order dated December 1, 2010.... There is no cognizable theory under which the Debtors could assert an exemption in the Business Assets greater than what they already possess by virtue of the Order. The Debtors scheduled the value of the Business assets as $0.00. The Debtors have not amended their schedules to assert any change in value to the Business Assets.... The Debtors are not entitled to any exemptions for the Business Assets which exceed the amounts permitted by the Order.
> ... The Trustee requests that the court deny the Debtors' amended exemptions

in the Business Assets as a matter of law on the basis that the Debtors are attempting to claim an exemption beyond the amount available to them under 11 U.S.C. § 522(d)(5). In other words, the debtors have no colorable basis for claiming the amended exemption in the Business Assets. The Court must deny the amended exemptions in the Business Assets as a matter of law.

In a footnote, the Trustee took special pains to note that she had not sought in her original objection to have the Debtors denied all exemption value, on any assertion "that the Debtors scheduled the values of the enterprise interests as 'worthless' with a value of $0.00." Rather, she had accorded the Debtors the benefit of any remaining value in their "wild-card" exemption under § 522(d)(5), above the amounts applied to other assets.

The Trustee went on to assert that the Debtors had "claimed the amended exemptions in the Business Assets in bad faith," lacking any basis in law or in fact. She requested that "the issue of bad faith be set for an evidentiary hearing."

In response, the Debtors invoked a broad right of amendment under Fed. R. Bankr.P. 1009 and *In re Ladd,* 450 F.3d 751 (8th Cir.2006). They denied that they had acted in bad faith, stating first that "the amendments were designed to compensate for a software error in the preparer's bankruptcy software, which caused the schedules to list the Debtors' exemption for Falls Flag Source at '$1.00' instead of '100% of FMV'."[3] Then, they raised an

---

**2.** For brevity, the assets in question will be termed "the enterprise interests" in the remainder of this decision. And, this reference will signify the residual equity value inhering in the ownership interests. The Debtors allege that the businesses' assets were encumbered by liens in favor of creditors of the entities or the Debtors. The extent of the liens and (as will be seen) the actual amount of equity value are issues that need not be reached in the present proceeding.

**3.** This apparently was a reference to two other line-entries related to the Debtors' flag dealership, on both sets of Schedules B and C. The previously-noted entry apparently de-

underlying factual issue—which seems to be the real motivation for their act of amendment, and the nub of the Trustee's present contentions as well:

> The Trustee has failed to demonstrate that the Debtors' amended exemptions exceed the limitations imposed in the Court's December 2, 2010 order or that they exceed the amount remaining available to them under 11 U.S.C. § 522(d)(5). The Debtors are not seeking to amend their exemptions beyond the value allowed under the exemptions, but are merely restating that they believe that their shares in the various business entities listed on the schedules have no value for the Trustee to recover.

When counsel for both sides made their in-court presentations, they were figuratively talking over each other's shoulders—as if they were never making eye contact, never sharing a frame of reference on the main substantive issue, and not evincing a real understanding of the other side's position. The remarks got clipped, heated, and close to *ad hominem*, and at times it was not clear that the lawyers were arguing about the same issue. But from a more distanced perspective, the Trustee's stance is closer to accurate than the Debtors'.

To begin with, the Debtors' purpose in amending was patent, notwithstanding their attorney's protestations: they were trying to reopen an issue treated in the December 2, 2010 order and to shunt it in a very different direction, toward a new disposition of the enterprise interests themselves. Their first-level goal—and undoubtedly the preferred outcome—was to box the estate into a dead-end legal posture by default: a withdrawal of the full value of the enterprise interests from the estate via exemption, through a combined application of the cap imposed by the December 2, 2010 order and the deeming of a value to the enterprise interests that fell below that cap. The latter, factual dimension would be imposed by implication, ultimately by operation of 11 U.S.C. § 522($l$).[4] Obtaining this legal posture would have given the Debtors a checkmate to any ensuing demand by the Trustee to account for an excess value in the enterprise interests. Also, it would have been a conclusive block to any effort by the Trustee to sell or otherwise liquidate the enterprise interests themselves.

noted an ownership interest in this unincorporated enterprise, even as it classified that as "Sole Proprieto." But, the Debtors also included line-entries reading "Falls Flag furnishings, fixtures, equipment" and "Falls Flag inventory—estimated," giving "current value[s]" of "9,100.00" and "27,000.00" for them, respectively, and "1.00" as the "value of claimed exemption" for each. The form order that the Trustee submitted for her original objection provided for the allowance of an exemption for these categories of $1.00 each, as per the Debtors' own claim and pursuant to *In re Soost*, 262 B.R. 68 (8th Cir. BAP 2001). In oral argument, much was made of this aspect of the Debtors' structure of claimed exemptions. However, the central issue put to the Court was directed elsewhere, the effect of the amendment to "100% of FMV" for the exemptions asserted for the enterprise interests—including the ownership of the "Sole Proprieto," whatever that may have been separate from the component hard assets.

4. In *Taylor v. Freeland & Kronz*, the Supreme Court held that the failure to object to a claim of exemptions by the deadline under Fed. R. Bankr.P. 4003(b) binds a trustee to the configuration of exemptions claimed by the debtor in Schedule C, even if the debtor "ha[s] no colorable statutory basis for claiming it." 503 U.S. 638, 642–643, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). 11 U.S.C. § 522($l$) operates to "ma[k]e the property exempt" after the passage of the deadline, absent objection. *Id.*

The Debtors clearly had a secondary, fallback goal, one that presumed a continuing vitality for the December 2, 2010 order, and that was built on its structure. They sought to force the issue of value into a judicial proceeding, were the Trustee to formally object to the amendment. As the Debtors contemplated, the factual issue would be the full value of the Debtors' equity in the enterprise interests, and the legal issue would be whether that fell below the quantum of their residual rights of exemption under § 522(d)(5), previously imposed as a cap by the December 2, 2010 order. As the Debtors saw it, they would put the Trustee to her burden as objector under Fed. R. Bankr.P. 4003(c); they would force her to produce some sort of evidence on the issue of value now, to rebut the prima facie weight assigned to a tacit assertion in the amended schedule—that the Debtors' interest in the "100% of FMV" of the enterprise interests fell below the balance of their exemption rights under § 522(d)(5).

Obviously, the first stage of this ploy failed; the Trustee did object. As to the second stage, the underlying question is whether the Debtors' assumptions about the dynamic of liquidation under Chapter 7 are correct.

■ Ultimately, they are not, at least for the posture of the parties in this case. The Debtors' rights to retain the enterprise interests in the face of liquidation under Chapter 7 are statutorily delimited by value, in the text of § 522(d)(5). As a result, the Debtors have no intrinsic, preemptive right to retain the interests themselves, in-kind and without respect to their value. *Schwab v. Reilly,* 560 U.S. ——, ——, 130 S.Ct. 2652, 2661–2663, 177 L.Ed.2d 234 (2010). The "interest"[5] that is protectible to them is measured by a

dollar-value, eventually to be reduced to a number. Here, that number is calculable by reference to an external variable, the otherwise non-exempt value in other assets that the Debtors would first protect by applying the wild-card exemption of § 522(d)(5). The formula and the application of the residual protection of exemption to the Debtors' enterprise interests were settled via the entry of the December 2, 2010 order.

That order established the full extent of the Debtors' *legal* rights to withdraw any part of the ownership attributes associated with the enterprise interests from the bankruptcy estate, pursuant to § 522(d)(5). Its ruling on that issue has *res judicata* effect for the parties' present dispute. *See Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983) (identifying elements of *res judicata* under federal law).

The Debtors as much as concede that. However, they essentially argue that the December 2, 2010 order left an issue open, which is now amenable to adjudication once triggered by their amendment and joined by the Trustee's objection. That issue is whether there is any value in the enterprise interests above the value of their now-allowed exemption as to those assets, which excess would still repose in the bankruptcy estate. If there is not, the Debtors maintain, then there is no possible recovery for the estate out of the enterprise interests—and the Trustee has no right to assert any further control over the interests themselves. The rub of the Debtors' position is that an issue of fact remains—that being the full value of the enterprise interests—and that the Court must address that issue now, in the context of the Trustee's objection.

The Debtors err in insisting that there is a justiciable dispute of fact at this point.

5. *See Schwab,* 560 U.S. at ——, 130 S.Ct. at 2661–2662.

One reason why they are wrong is obvious: the estate retains the *title* to the enterprise interests, *Schwab*, 560 U.S. at ——, 130 S.Ct. at 2667, and hence the *control* over them whether they have value to the estate or not. Second, they err in failing to recognize that bankruptcy under the Code of 1978 entails two separate processes, which run largely in parallel but semi-independently. For the next stage, at least, the parties' remaining contentions over these assets must play out in the *administrative* process in bankruptcy. The abstract operation of the *judicial* process must give way to the fluid operation of the open market, in the Trustee's hands-on administration of the estate.

To put it more concretely, it is time for the Trustee to find a buyer, or to force a reduction of the estate's residual interests to liquid money by some means of liquidation other than sale. And, she must be permitted to do so without requiring her to go through another judicial proceeding to establish, in the abstract, that her effort might be efficacious under the general conditions of the current market. That, really, would be the function of the "valuation hearing" that the Debtors' counsel urges:

to determine, presumably from expert testimony, the functional marketability of the equity interests for cash at present, and the possible amounts to be had for them now if sold.

This stage of a liquidation bankruptcy case, however, requires no such adjudication. The excess value in the enterprise interests, *if any*, is now to be administered; and the issue of value is speculative until the market speaks to it, after the enterprise interests themselves are aired for sale. If the Trustee finds a third-party buyer for the enterprise interests or finds a different way to reduce them to cash,[6] the Debtors will lose the interests themselves and receive cash to match the value of their exemption rights. *Id.* at ——, 130 S.Ct. at 2668. (Their other option would be to present a successful topping bid against the prospective purchaser.)[7] And were the Trustee not to find an outside buyer, the avenue then would be abandonment of them—whether overt and voluntary under 11 U.S.C. § 554(a), forced under 11 U.S.C. § 554(b), or by operation of law at the windup of the estate and this case under 11 U.S.C. § 554(c).[8]

6. One such way might be a forced dissolution of the business entities themselves, entailing a liquidation of their assets. Whether this remedy would be available to a shareholder like the bankruptcy estate, holding several different positions in the various entities, is a matter of state law. *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007); *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (both holding that property interests for purposes of bankruptcy administration are created and defined by state law).

7. Were they to do that, a judicial proceeding could come out of the sale effort, via an objection to a trustee's notice of sale on the ground that the Debtors would pay more. Fed. R. Bankr.P. 6004(b) would be the platform for such a judicial proceeding, in resolu-

tion of a controversy that arose out of the administrative process. The point is, however, that a judicial proceeding on the abstract and hypothetical issue of value cannot be used to channel—or to block—a trustee's *initial* efforts at liquidation.

8. And it should be said here: if the Trustee were to consider some sort of proceeding against the Debtors to "turn over" an excess value in the enterprise interests, stemming from her tacit relegation of control to them, she would be ill-put substantively. In the first place, she would have to base such a request for relief on her own abstract evidence of value, to establish that the Debtors were "holding" something to which the estate was entitled. That would be just as speculative as the evidence that the Debtors would now force her to produce; and advancing it then would be no more acceptable on consider-

So, the Trustee's objection must be sustained. The Debtors have no right to force the issue of control of the equity interests themselves, by raising a hypothetical issue of value. *Cf., Schwab v. Reilly,* 560 U.S. at —— n. 19, 130 S.Ct. at 2668 n. 19 (terming debtor's strategy there an "attempt to convert into a dollar value an improper claim to exempt the [property] itself, 'whatever its value turn[ed] out to be'," by scheduling claimed exemption in dollar-amount equal to scheduled value of subject assets themselves as a means of signifying debtor's intent to claim full ownership as exempt) (citation and parentheticals omitted).

■ This leaves the Trustee's accusation that the Debtors acted in bad faith in essaying their amendment, and her demand for an evidentiary hearing on that issue.

There is no warrant to go forward on this request. At most, the Debtors' current counsel is guilty of not recognizing the full import of the procedural dynamic of a Chapter 7 case, in the wake of *Schwab's* pronouncements on the legal plane. He latched onto *Schwab's* suggestion as to how to raise the issue of exemptibility, as to the full value of the enterprise interests.[9] However, he did not recognize that this only pushes the parties further into the realm of estate administration if the trustee responds in the way that *Schwab* envisions, i.e., conceding any remaining "wild-card" exemption value and hanging on to the remainder. *Schwab* does not articulate the next step in practical terms. But it necessarily is

in the administrative process, by parlaying estate assets into cash in a real-life environment.

In demanding a "valuation hearing" were "the Trustee [to] persist in her opinion as to value of the exempt property," the Debtors' counsel invoked a measure that bankruptcy courts entertained for a few years, early after the effective date of the Bankruptcy Code of 1978. *Schwab* certainly did not prescribe that procedure as the next step. To the contrary, *Schwab* directs the process to the same abstract considerations by which the Trustee structured her proposed order on her original objection: a split-out of a debtor's exempt quantum by a value-measure, and retention by the estate of title and residual value if the value were greater than that protectible under applicable statute. 560 U.S. at ——, 130 S.Ct. at 2667–2668. *Schwab* did not specify a particular real-life measure to achieve the "expeditious and final disposition" of the underlying asset that it exhorts, other than its blithe observation that the allowance of a value-based exemption would result in "title to the asset … remain[ing] with the estate pursuant to [11 U.S.C.] § 541, and the debtor [being] guaranteed a payment in the dollar amount of the exemption," 560 U.S. at ——, 130 S.Ct. at 2667. *Schwab* does not identify how either estate or debtor would get to a realization, whether in-kind or cash. By not really speaking to that in concrete terms, *Schwab* left just enough opening for the Debtors' counsel here to request a procedure otherwise long-abandoned by busy courts, the all-

---

ations of justiciability. And, given its conception of the turnover remedy, the Eighth Circuit probably would not countenance the use of 11 U.S.C. § 542(a) to effect a coercive liquidation on the Debtors, even if the Trustee had some sort of expert opinion on value. *See In re Pyatt,* 486 F.3d 423 (8th Cir.2007).

The relegation to the market must apply equally, as to both sides here.

9. The lawyer who commenced the case for the Debtors (who remains counsel of record) missed this; but that only deferred the blow-up between his clients and the Trustee.

purpose but ultimately unfocused and speculative "valuation hearing," with its backdrop notion that the court somehow could address a ripe, justiciable issue through it.

In any event, counsel's analysis could not be termed frivolous; and his effort to recast the December 2, 2010 order toward an effect more weighted to the Debtors cannot be termed abusive.[10]

In any case, it is not entirely clear what the Trustee was after in demanding an evidentiary hearing on the issue of bad faith. If she intended to seek an award of attorney fees, she neither explicitly prayed for that sort of sanction. Nor did she recite facts or law for it in her written submissions. Circuit precedent on the issue of bad faith in the amendment of claims of exemption is silent as to possible sanctions, other than the disallowance of the exemption. *In re Kaelin*, 308 F.3d 885 (8th Cir.2002) (recognizing power in bankruptcy court to disallow amended claim of exemption on ground of "bad faith on the part of the debtor and prejudice to the creditor"; silent as to any consequence other than adverse substantive court ruling on merits). *See also In re Ladd*, 450 F.3d at 755.

Thus, case law does not provide a basis for an award of attorney fees, independent of generally-applicable statute and rule. The Trustee has not invoked Fed. R. Bankr.P. 9011; 28 U.S.C. § 1927; or even the Court's inherent authority to impose sanctions on a party for bad-faith conduct in litigation.[11] She did not make any record that she had given the Debtors and their attorney the benefit of the "safe harbor" provisions of Fed. R. Bankr.P. 9011(c)(1)(A), before she mentioned the accrual of attorney fees as an alleged prejudice to the estate at the very end of her initial objection.[12] Without a pointed request for a collateral imposition of sanctions, and given the identical outcome on the merits, there is no reason to advance the Trustee's accusation of bad faith to an evidentiary hearing, or to spend any further time on it.

IT IS THEREFORE ORDERED:

1. The Trustee's objection to the Debtors' amended claim of exemption in the following assets:

| Stephen Wiczek: | Donna Wiczek: |
| --- | --- |
| Nisswa Marine, Inc. | Nisswa Marine, Inc. |
| Nisswa Properties, LLC | Nisswa Properties, LLC. |
| Gull Lake Properties, LLC | |
| Stephen Wiczek and Donna Wiczek, d/b/a Falls Flag Source | |

10. As much as *Schwab's* majority opinion reflected some conversance with the actual operation of a Chapter 7 case, it did not acknowledge a coequal role for the more informal administrative process, in finalizing parties' claims as to debtors' assets. As a result, courts and lawyers are still trying to fit *Schwab's* pronouncements into an operating framework. It has only been a year, after all. *E.g., In re Gebhart*, 621 F.3d 1206, 1211–1213 (9th Cir.2010); *In re Messina*, 386 Fed.Appx. 152, 154 (3d Cir.2010); *In re OBrien*, 443 B.R. 117, 135–136 (Bankr. W.D.Mich.2011); *In re Moore*, 442 B.R. 865, 866–868 (Bankr.N.D.Tex.2010). (Just based on these decisions, one might say that the full import of *Schwab*—procedural, evidentiary, and even substantive—is quite unsettled.)

11. *E.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Willhite v. Collins*, 459 F.3d 866, 870 (8th Cir.2006); *Bass v. General Motors Corp.*, 150 F.3d 842, 851 (8th Cir.1998).

12. This is all she says, in ¶ 19:

The Trustee asserts ... that the legal fees incurred by the estate will result in a diminution of the estate as a result of the Debtors' actions. The Trustee requests that the issue of bad faith be set for an evidentiary hearing.

made via the filing of an amended Schedule C [Dkt. No. 37], is sustained.

2.   Any change in the Debtors' asserted theory of exemption for the assets described in Term 1 of this order, and any renewed effort to withdraw any of the value of those assets from the bankruptcy estate beyond that allowed under the Court's order of December 2, 2010 [Dkt. No. 23], were legally ineffective.   To the extent of any such asserted amendment, the Debtors' substantive claim of exemption to those assets under their amended Schedule C is disallowed.

3.   The Trustee's request for an evidentiary hearing on her allegations of bad faith, and any inherent request for imposition of sanctions on the Debtors, is denied.