**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE FIRST CIRCUIT

———————————————

**BAP NO. RI 19-037**

———————————————

**Bankruptcy Case No. 17-10570-DF**

———————————————

**MARCUS CHARLES BERNARD SOORI-ARACHI and
STEPHANIE TAMGHO,
Debtors.**

———————————————

**MARCUS CHARLES BERNARD SOORI-ARACHI,
Appellant,**

**v.**

**STACY B. FERRARA, Chapter 7 Trustee,
Appellee.**

———————————————

**Appeal from the United States Bankruptcy Court
for the District of Rhode Island
(Hon. Diane Finkle, U.S. Bankruptcy Judge)**

———————————————

**Before
Lamoutte, Fagone, and Katz,
United States Bankruptcy Appellate Panel Judges.**

———————————————

**Marcus Charles Bernard Soori-Arachi, pro se, on brief for Appellant.
Stacy B. Ferrara, Esq., Chapter 7 Trustee, on brief for Appellee.**

———————————————

**January 14, 2021**

———————————————

**Katz, U.S. Bankruptcy Appellate Panel Judge.**

Marcus Charles Bernard Soori-Arachi (the "Debtor") appeals from the bankruptcy court's: (1) order denying his motion under Rule 4003 (the "Rule 4003 Motion"), challenging as time-barred the objection of the chapter 7 trustee (the "Trustee") to his claimed exemption of funds on deposit with Fidelity Investment Annuity Service Center ("Fidelity"); and (2) order sustaining the Trustee's objections to the Debtor's third and fourth amended Schedule C seeking to exempt those funds (collectively, the "Orders").[1]   By this appeal, the Debtor attempts to prevent the Trustee's liquidation of the annuity his father purchased for him when he was a minor—now worth $105,000.   As discussed below, the Debtor's quest fails because: (1) the Rule 4003 Motion was procedurally and substantively flawed; (2) he waived his claims of exemption under Rhode Island law by failing to brief them on appeal; and (3) he failed to claim and demonstrate entitlement to an exemption under § 522(b)(3)(C), the applicable Bankruptcy Code provision.   Accordingly, we **AFFIRM** the Orders.

## BACKGROUND

### I.     The Bankruptcy Filing, First Amended Schedules, and Conditional Consent Order

In April 2017, the Debtor and his wife, Stephanie Tamgho (collectively, the "Joint Debtors"), filed a chapter 7 petition, pro se.   Stacy Ferrara was appointed Trustee and a § 341 meeting of creditors was scheduled for May 18, 2017.   A few days before the creditors' meeting, on May 15, 2017, the Joint Debtors filed an amended Schedule A/B: Property (the

---

[1]   Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532.   All references to "Rule" are to the Federal Rules of Bankruptcy Procedure.

"First Amended Schedule A/B"), listing previously undisclosed interests in several accounts, including "Fidelity Trust/UTMA accounts," as reflected in the image below:[2]



Also on the First Amended Schedule A/B, on the line for retirement or pension accounts, the

Debtor disclosed he might have accounts, as indicated below:

---

[2] This image shows a portion of the First Amended Schedule A/B as it appears in the bankruptcy court's docket and in the Appellant's Appendix; the author of the handwritten notes is unknown.



On his Amended Schedule C also filed on May 15, 2017 (the "First Amended Schedule C"), the Debtor elected the set of federal exemptions under § 522(b)(2), listing an interest in two assets, "Trust/support accts" from line 17 of Schedule A/B, and "Possible retirement accounts" from line 21 of Schedule A/B. As reflected below, he claimed as exempt 100% of their fair market value, up to any applicable statutory limit:



Additionally, the Debtor left blank the space provided for disclosing the value of his property. As for the specific laws that allowed the Debtor to exempt 100% of the fair market value of the accounts, the Debtor stated: "unknown, please advise (pro se) 11 [U.S.C. § 522(b)(2)]?"

4

At the first meeting of creditors, the Debtor, then unrepresented by counsel, testified that he had been unable to locate any of the accounts he believed his father had opened on his behalf when he was a minor.[3] The Debtor gave the Trustee the names of institutions he suspected held possible accounts in his name. After issuing subpoenas to five financial institutions, the Trustee discovered the Debtor owned an annuity at Fidelity—specifically, account number 323026826—with an estimated current value of $105,000 (the "Fidelity Account"). This account number was one in the series of four numbers the Debtor listed on his First Amended Schedule A/B.

After writing several letters to the presiding bankruptcy judge in which he insisted that the funds in the Fidelity Account were exempt retirement funds, the Debtor (having obtained counsel) entered into a Conditional Consent Order (the "Consent Order") with the Trustee. The purpose of the Consent Order was to "reduc[e] litigation expenses for all parties" and to "preserv[e] and protect[ ] the value of the" Fidelity Account. The Consent Order required the Debtor to "immediately amend his bankruptcy schedules to reflect his ownership of the [Fidelity] Account and any exemption applicable thereto" and "enjoined" him "from expending, transferring, liquidating, disposing of, encumbering, pledging, borrowing against, or wasting any of the Account until further Order . . . ." The court approved the Consent Order on May 24, 2018—about eleven months after the conclusion of the meeting of creditors.

## II. Second Amended Schedule C and Trustee's Objection

### A. Second Amended Schedule C

In June 2018, the Joint Debtors filed another Amended Schedule A/B (the "Second Amended Schedule A/B"). On this version of his Schedule A/B, the Debtor no longer listed the

---

[3] Originally scheduled for May 18, 2017, the first meeting of creditors was continued to June 13, 2017. The Trustee docketed "Meeting Held" on June 16, 2017.

four numbered bank accounts he had previously listed. Instead, on line 17, "Deposits of money," he listed "Misc. accounts of nominal value known to Trustee," and left blank the space provided for indicating their value. On line 21, he indicated he had retirement or pension accounts, but listed their value and location as "unknown." Without disclosing an account number, the Debtor also listed an interest in an account at "Fidelity" (presumably the Fidelity Account) with an estimated value of $105,000 in Part IV, line 23, "Annuities" (rather than in the section provided for "Deposits of money" or "Retirement or pension accounts," as previously listed).

On the same date, the Debtor also filed another Amended Schedule C (the "Second Amended Schedule C"), claiming exemptions under § 522(b)(3). For the first time, he claimed an exemption in the Fidelity Account (from line 23 of the Second Amended Schedule A/B) to the extent of 100% of its fair market value, up to any applicable statutory limit, pursuant to R.I. Gen. Laws § 27-4-11, § 27-4-12, § 27-18-24, and § 9-26-4(16).

B.    Trustee's Objection to the Second Amended Schedule C and the Joint Statement of Agreed Facts

The Trustee filed an objection to the Debtor's claimed exemption of the Fidelity Account listed in his Second Amended Schedule C (the "Objection to the Second Amended Schedule C"). At the outset, the Trustee acknowledged that the Debtor's claim of exemption under R.I. Gen. Laws § 9-26-4(16), the "wild card exemption," was "appropriate, but limited to $6,400.00." She challenged, however, his claims of exemption under R.I. Gen. Laws § 27-4-11, § 27-4-12, and § 27-18-24.

In support of her Objection to the Second Amended Schedule C, the Trustee attached a copy of "an updated version" of the original Annuity Contract issued by Fidelity Investments Life Insurance Company in April 1998. Both the Annuity Contract and the Fidelity Annuity

6

Information Summary (the "Information Summary") accompanying the contract identified the Debtor as the annuitant and annuity owner. The Information Summary specified that the Debtor's annuity had been issued as a "non-qualified contract" and explained:

> That simply means that you established your annuity using "after-tax" money (money that has already been taxed). However, all earnings within this contract will continue to grow tax-deferred until you withdraw them. To continue building the value of your contract, please keep in mind that you can add to this annuity as often as you wish.

In November 2018, the Trustee and the Debtor (by this time, again pro se) filed an Agreed Statement of Facts, Disputed Facts and Supporting Documents (the "Joint Statement") in which they agreed, among other things, that: (1) the Debtor's father "purchased a non-qualified deferred annuity (the 'Deferred Annuity')" for $10,040.77 on April 6, 1998; and (2) after October 30, 2019, the Debtor became "the current designated owner" and annuitant of the Deferred Annuity. The parties disputed a single fact—whether "[t]he Debtor was denied access to the Deferred Annuity Contract by Fidelity prior to his bankruptcy filing."

III.    **Decision Regarding the Trustee's Objection to the Second Amended Schedule C**

After holding a hearing on January 23, 2019, the bankruptcy court issued its decision regarding the Objection to the Second Amended Schedule C (the "prior decision") on March 26, 2019, sustaining the Trustee's objection to the Debtor's claimed exemption of the Fidelity Account "to the extent the exempted amount exceed[ed] $6,400.00." The court found that: (1) the Fidelity Account held a "non-qualified deferred variable [a]nnuity" purchased by the Debtor's father for $10,040.77; and (2) the Debtor was the owner and annuitant of the account, with the right to liquidate, assign, or surrender it. As a matter of law, the court rejected the Debtor's claims of exemption under R.I. Gen. Laws §§ 27-4-11, 27-18-34, and 27-4-12.

7

**IV. Third Amended Schedule A/B, Third Amended Schedule C, and Trustee's Objection**

Within two weeks of the prior decision, the Joint Debtors filed a third Amended Schedule A/B, with the Debtor again listing a "Fidelity Account" (with an unspecified account number). The Joint Debtors also filed a third Amended Schedule C (the "Third Amended Schedule C"), indicating they were electing state and federal non-bankruptcy exemptions under § 522(b)(3). This time, the Debtor sought to exempt the Fidelity Account pursuant to § 522(b)(4)(B)(i), § 522(b)(4)(B)(ii)(II), R.I. Gen. Laws § 9-26-4(15), and R.I. Gen. Laws § 9-26-4(16).

Within 30 days, the Trustee filed an objection to the Third Amended Schedule C (the "Objection to Third Amended Schedule C") on various grounds. Although she reiterated that she had no objection to the Debtor's exemption of the Fidelity Account to the extent of $6,400.00 pursuant to R.I. Gen. Laws § 9-26-4(16), the Trustee "vehemently" objected to the newly claimed exemptions under § 522(b)(4)(B)(i) and (ii), arguing:

> [Section] 522(b)(4)(B)(i) and § 522(b)(4)(B)(ii)(II) both refer to the exemption of "retirement funds" and provide conditions as to the exemption of "retirement funds" as provided in . . . § 522(b)(3)(C) which the Debtor has not elected. However, had he elected said exemption, the Trustee asserts that the parties have already stipulated that the contents of the Fidelity Account [are] not "retirement funds," but rather a non-qualified deferred variable annuity. There is no evidence within the Annuity Contract that the annuity constitutes "retirement" [funds] within the meaning of . . . § 522(b)(3)(C).

The Trustee also objected to the Debtor's claimed exemption under R.I. Gen. Laws § 9-26-4(15), on the grounds that the Fidelity Account did not constitute a right or interest of a person in a "prepaid tuition program" or a "tuition savings program" as required by that statute.

The Debtor filed a response to the Objection to Third Amended Schedule C (the "Response to Objection to Third Amended Schedule C"), arguing he had never agreed that "the contents of the account [were] not retirement funds," only that the Fidelity Account was "a

8

non-qualified deferred variable annuity." The Debtor did not suggest that the Trustee's objection was late or forfeited.

## V. Fourth Amended Schedule C and the Trustee's Objection

Before the bankruptcy court could rule on the Objection to Third Amended Schedule C, the Joint Debtors filed a fourth Amended Schedule C (the "Fourth Amended Schedule C"), in which the Debtor elected state and federal non-bankruptcy exemptions, and sought to exempt the Fidelity Account pursuant to yet another statute, R.I. Gen. Laws § 9-26-4(11) (for individual retirement accounts, among other things), in addition to the previously claimed exemptions under § 522(b)(4)(B)(i), § 522(b)(4)(B)(ii)(II), R.I. Gen. Laws § 9-26-4(15), and R.I. Gen. Laws § 9-26-4(16).

Again, within 30 days, the Trustee filed an objection to the Fourth Amended Schedule C (the "Objection to Fourth Amended Schedule C"), reasserting the substance of her Objection to Third Amended Schedule C. In addition, in support of her objection to the Debtor's newly claimed exemption of the Fidelity Account under R.I. Gen. Laws § 9-26-4(11), the Trustee relied heavily upon the bankruptcy court's findings in the prior decision, arguing the court had already determined that the Fidelity Account was a non-qualified deferred annuity, not an individual retirement account as defined by the Internal Revenue Code.

## VI. The Rule 4003 Motion, the Trustee's Objection, and the Debtor's Supplemental Response

A week later, the Debtor filed the Rule 4003 Motion, arguing that, because the Trustee failed to object to his First Amended Schedule C within 30 days of the June 16, 2017 creditors' meeting as required by Rule 4003(b)(1) or to obtain an extension of that deadline, she was "estopped from objecting to [the] exemption of any accounts listed in [the] amended schedules of" May 15, 2017. (emphasis omitted). Asserting that "[p]roperly claimed exemptions are

9

presumptively valid absent an objection," the Debtor asked the court "to approve" the claimed exemption of the Fidelity Account set forth in the First Amended Schedule C and direct the Trustee "to remove the administrative hold" on the account.

In her objection to the Rule 4003 Motion (the "Objection to Rule 4003 Motion"), the Trustee maintained that the Debtor's First Amended Schedule C "failed to identify any Deposits of Money or the Fidelity Account." According to the Trustee, that schedule listed only three assets: the "wild card," "Trust /support accounts," and "possible retirement accounts." "[W]ith no exemption claimed on the [First] Amended Schedule C as to the Fidelity Account, no objection was necessary," the Trustee argued, and she therefore concluded the meeting of creditors on June 16, 2017. The Trustee further asserted it was not until nearly a year later, on June 6, 2018, after obtaining counsel, that the Debtor filed the Second Amended Schedule A/B, specifically disclosing the Fidelity Account. When the Debtor filed the Second Amended Schedule C, seeking to exempt the Fidelity Account under various Rhode Island statutes, the Trustee timely objected, she contended. Emphasizing that the Debtor failed, at that time, to argue she had forfeited her objection on the grounds of untimeliness, the Trustee claimed the prior decision constituted the law of the case and the Rule 4003 Motion should be denied.

In response to the Trustee's Objection to Rule 4003 Motion, the Debtor asserted that the Trustee admitted she did not attempt to object to the First Amended Schedule C and that the "Fidelity [Account] and associated known account numbers were listed" in the First Amended Schedule C. Thus, he argued, the Trustee was "negligent" in failing to object to the First Amended Schedule C. Citing Taylor v. Freeland & Kronz, 503 U.S. 638 (1992), and the U.S. Department of Justice Handbook for Chapter 7 Trustees, the Debtor reiterated that in the absence of a timely objection, his exemption should be deemed allowed.

10

**VII. The June 2019 Hearing**

At the June 24, 2019 hearing, the court framed the issue presented by the Rule 4003 Motion as one of timing, stating the question was whether the Debtor "should win automatically, without getting into the merits of his third and fourth amendment," because the Trustee did not timely object to the First Amended Schedule C. The Trustee reiterated her contention that the First Amended Schedule C required no objection, and the filing of each amended Schedule C by the Debtor reset the 30-day objection period. With the filing of each amended Schedule C, the Trustee further argued, the issues regarding the prior amended Schedule C became irrelevant. Additionally, the Trustee maintained the Debtor waived his argument under Rule 4003 by failing to raise it earlier.

With respect to the merits of the Debtor's newly claimed exemptions under § 522(b)(4)(B)(i) and (b)(4)(B)(ii)(II), the Trustee asserted: (1) the Debtor failed to properly claim an exemption under § 522(b)(3)(C); (2) the Debtor failed to provide evidence that the Fidelity Account was exempt from taxation under §§ 401, 403, 408, 408(a), 414, 457, or 501(a) of the Internal Revenue Code; and (3) because the parties agreed in the Joint Statement, and the court previously found in the prior decision, that the Fidelity Account was a non-qualified account, the Debtor was judicially estopped from asserting that the Fidelity Account was a retirement account. As for the Debtor's effort to exempt the Fidelity Account under state law, the Trustee reiterated her argument that R.I. Gen. Laws § 92-6-4(11) and R.I. Gen. Laws § 9-26-4(15) were inapplicable.

Several days after the hearing, the Debtor filed a supplemental response to the Trustee's Objection to Third Amended Schedule C and Objection to Fourth Amended Schedule C, citing Taylor v. Freeland & Kronz in support of his argument that the Trustee waived her objection to

11

his claimed exemption of the Fidelity Account by filing it late, and arguing that Schwab v. Reilly, 560 U.S. 770 (2010), did not apply. The Debtor also filed an affidavit in which he averred that he "was unaware of" the Consent Order and did not authorize his former counsel to agree to it on his behalf.

## VIII.  The Bench Decision and August 7, 2019 Orders

The bankruptcy court issued a lengthy decision from the bench on August 7, 2019, which addressed the Trustee's Objection to Third Amended Schedule C and the Objection to Fourth Amended Schedule C, in addition to the Rule 4003 Motion and the Trustee's objection thereto.[4]

### A.  The Rule 4003 Motion

After incorporating the prior decision by reference, the court addressed the Rule 4003 Motion, characterizing it as an attempt by the Debtor "to turn back time to . . . when [the Joint Debtors] first filed their first amended Schedule C on May 15, 2017, and ignore all that has transpired in th[e] case since then." Concluding that the Debtor could not prevail, the court offered several rationales.

First, the court ruled that the Debtor waived the timeliness argument presented in the Rule 4003 Motion, "having asserted it for the first time long after he amended his [first] schedule[d] exemption" and "fully litigated the challenge to his second amended exemption." Second, citing Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010), the court agreed with the Trustee's argument that the Debtor was judicially estopped from challenging the Objection to the Second

---

[4] The court viewed the Debtor's response to the Trustee's Objection to Third Amended Schedule C in connection with the Fourth Amended Schedule C as well, reasoning that the latter schedule encompassed the claims of the former.

Amended Schedule C or the Consent Order. The court was unpersuaded by the Debtor's assertion in his affidavit that he was unaware of the Consent Order.

Despite its conclusion that the Debtor's arguments in the Rule 4003 Motion were procedurally barred, the court still examined the substance of those arguments and determined that the time limits prescribed by Rule 4003 were not tolled: "The vague description [in the First Amended Schedule C] of 'trusts/support accounts' from line 17, deposits of money, coupled with the failure to set a specific statute allowing for such exemption . . . was facially insufficient to trigger the 30-day objection period" of Rule 4003(b). Distinguishing Taylor from the instant case, the court noted that in Taylor "there was no ambiguity as to the identity" of the asset the debtor sought to exempt.

Concluding that the Debtor's entries on the First Amended Schedule C did not satisfy the criteria established in Schwab for evaluating the propriety of a debtor's exemptions, the court went on to further observe:

> Indeed, the debtors implicitly acknowledge their failure to adequately list an annuity on first amended Schedule C, and identify specific exemption statutes when they agreed to file their second amended Schedules A/B, and C to "avoid unnecessary litigation."

Finally, the court focused on the operation of Rule 4003, stating that rule "expressly resets the exemption deadline" when there is an amendment to Schedule C. Although the court acknowledged the split of authority "on whether an amendment to Schedule C that does not relate to or affect a prior exemption claim resets the objection clock for that specific exemption claim," it perceived no need to resolve that issue, reasoning:

> Here, there's no question that each time [the Debtor] amended Schedule C through the filing of the second, third, and fourth amended Schedule C, he modified and affected his claimed exemption to the Fidelity account. Thus, the filing of each of these amended . . . Schedules C reset the objection period for the Fidelity account to 30 days after the filing of each amendment.

13

The Trustee "timely filed her objections to each of these amended schedules" under this standard, the court ruled.

## B.     The Objections to the Third and Fourth Amended Schedule C

After denying the Rule 4003 Motion for all of the above reasons, the court went on to examine the Trustee's objection to the Debtor's claimed exemption of the Fidelity Account listed in his Third Amended Schedule C and Fourth Amended Schedule C.[5]   Despite acknowledging the Trustee's contention that the Debtor failed to properly claim an exemption under § 522(b)(3)(C), the court did not rule on that argument.   The court sustained the Trustee's objection to the claimed exemption of the Fidelity Account under § 522(b)(4)(B) on the grounds that the funds at issue did not qualify as retirement funds under <u>Clark v. Rameker</u>, 573 U.S. 122 (2014).   The court also highlighted that, in the prior decision, it determined the Fidelity Account was a non-qualified annuity.   This finding, according to the court, constituted an "'adverse determination' within the ambit of Section 522(b)(4)(B)(i)."

Shifting its attention to the Debtor's claim of exemption under R.I. Gen. Laws § 9-26-4(11) and R.I. Gen. Laws § 9-26-15, the court concluded that neither statute applied.

Based on the foregoing analysis, the court sustained the Trustee's objections to the Third Amended Schedule C and Fourth Amended Schedule C.   On August 7, 2019, the court entered the Orders.   This appeal followed.

---

[5]   For clarity, the court reiterated "its earlier allowance in the prior decision of an exemption of $6,400 of the value of the Fidelity Account" under R.I. Gen. Laws § 9-26-4(16).

14

## I.     The Debtor

The Debtor concedes there are no issues of fact.   His core arguments are: (1) the Fidelity

Account qualifies as a retirement fund within the Supreme Court's definition of that term in

Clark v. Rameker; (2) the bankruptcy court misapplied § 522(b)(4)(B); and (3) the bankruptcy

court should have concluded the Trustee was estopped from objecting to his Third Amended

Schedule C and Fourth Amended Schedule C because her failure to object to his First Amended

Schedule C automatically rendered the Fidelity Account exempt.   The Debtor also complains

that the bankruptcy court abused its discretion by considering law that neither party had cited.

The Debtor further contends the bankruptcy court misapplied Supreme Court precedent,

including Schwab v. Reilly and Taylor v. Freeland & Kronz.   He asserts that his First Amended

Schedule C gave the Trustee "notice regarding the precise asset being claimed as exempt," and

enabled the Trustee to gain access to the Fidelity Account and "put an administrative hold on it."

The Debtor rejects the notion that he waived his right to challenge the timing of the Trustee's

objection to his claimed exemptions.   Lastly, during oral argument, the Debtor asserted that,

because of his pro se status, he was entitled to some indulgence in the interpretation of his

bankruptcy schedules.

## II.     The Trustee

The Trustee urges the Panel to affirm on the following grounds:

1) the Debtor stipulated that the Fidelity Account constitutes a non-qualified deferred annuity in the [Joint Statement], not a qualified retirement account as required by 11 U.S.C. § 522(b)(3)(C); 2) the Bankruptcy Court made a prior determination on March 26, 2019 . . . that the Fidelity Account consisted of a non-qualified deferred annuity governed by the annuity contract, and said decision was never appealed and remains the law of the case; 3) the Fidelity Account did not constitute retirement funds within the meaning of 11 U.S.C. § 522(b)(3)(C); and 4) the Debtor failed to meet his burden and submit any evidence to the Court as to

15

whether or not the retirement fund fails to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986.

The Trustee adds that the Debtor misunderstands Clark v. Rameker and the applicable exemption statutes. In support of her position that she met her burden under Rule 4003(b)(3), the Trustee points to the Debtor's "admission" in the Joint Statement that the Fidelity Account constituted a non-qualified deferred annuity:

> "Qualified" annuities are those types of annuities that comply with the Internal Revenue Code provisions in IRC §§ 401-409 which afford other tax benefits to the holders, and the only types of annuities which qualify for these tax benefits are individual retirement annuities (under IRC § 408(b)) and employee annuities (under IRC § 403(a) and (b))[.] See[] In re[] Bogue, 240 B.R. 742, 745-746 (Bankr. E.D. Wis. 1999). The Debtor stipulated that the Fidelity Account consisted of a "non-qualified" deferred annuity which means that it did not satisfy the requirements under § 408(b) or §§ 403(a) or (b) of the Internal Revenue Code.

To the extent the court cited cases which the parties did not, it acted within its discretion under § 105, the Trustee argues. Moreover, she asserts the court's decision was appropriately based on stipulated facts, the prior decision, and the law.

## JURISDICTION

We have jurisdiction to consider appeals from final orders. See 28 U.S.C. § 158(a)(1), (c)(1); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015). "An order sustaining an objection to exemption is a reviewable final order." Oliveras Rivera v. Otero Nazario, 610 B.R. 414, 416 (D.P.R. 2020) (citing Gordon v. Pappalardo (In re Gordon), 487 B.R. 600, 602 (B.A.P. 1st Cir. 2013)). Although the order denying the Rule 4003 Motion was interlocutory when entered, it later merged into the final order sustaining the Objection to Third Amended Schedule C and the Objection to Fourth Amended Schedule C. See Segarra Miranda v. Banco Popular de P.R. (In re Rivera Mercado), 599 B.R. 406, 416 (B.A.P. 1st Cir. 2019) (providing that, "under

16

the 'merger rule,' prior interlocutory orders merge with the final judgment in a case and may be reviewed on appeal from the final order") (citation omitted); Wiscovitch-Rentas v. UR CSM Plaza, Inc. (In re PMC Mktg. Corp.), BAP No. PR 15-023, 2016 WL 319515, at *7 n.21 (B.A.P. 1st Cir. Jan. 19, 2016) (noting that appeal from final judgment "subsumes all rulings producing the judgment") (citation omitted).   Therefore, we have jurisdiction over both appealed orders.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  Wiscovitch Rentas v. Molina González (In re Morales García), 507 B.R. 32, 42 (B.A.P. 1st Cir. 2014) (citation omitted).   We review "orders regarding a debtor's claimed exemptions *de novo*, especially where, as here, there are no disputed issues of fact."  Massey v. Pappalardo (In re Massey), 465 B.R. 720, 723 (B.A.P. 1st Cir. 2012) (citations omitted).   In addition, questions involving the construction and application of exemption statutes are reviewed de novo.  See Oliveras Rivera, 610 B.R. at 416; In re Gordon, 487 B.R. at 602.

## DISCUSSION

I.      Exemptions, Generally

A.      Section 522(l)

Section 522(l) requires the debtor to "file a list of property that the debtor claims as exempt under subsection (b) . . . ."   11 U.S.C. § 522(l).   The Federal Rules of Bankruptcy Procedure require debtors to list on Schedule A/B "their assets (most of which become property of the estate)," and on Schedule C "to list the property they wish to reclaim as exempt." Schwab, 560 U.S. at 774-75.   "Pursuant to [Rule] 1009(a), a debtor may amend a claim of exemptions at any time before the case is closed as a matter of right."   In re Gutierrez Hernandez, No. 10-01762 (ESL), 2012 WL 2202931, at *4 (Bankr. D.P.R. June 14, 2012).

17

"Section 522(b) affords debtors an election between those exemptions provided in § 522(d) or, alternatively, exemptions available under state and federal non-bankruptcy law." Howe v. Richardson (In re Howe), 232 B.R. 534, 536 (B.A.P. 1st Cir. 1999) (citation omitted). "Section 522(b)(1) also permits each individual state to 'opt out' of the § 522(d) exemption scheme, thereby removing that option for its bankruptcy debtors." Id. (citing 11 U.S.C. § 522(b)(1)). "Rhode Island is among the minority of states which have not 'opted out' of the § 522(d) exemption scheme in favor of their own exemptions, and thus Rhode Island bankruptcy debtors retain the option of selecting either of the alternatives set forth in § 522(b)." Id.

Section 522(l) further provides: "Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l). In other words, "[t]he validity of a claimed exemption is presumed unless a party in interest objects . . . ." In re Bertone, 486 B.R. 5, 8 (Bankr. D. Mass. 2013) (citation omitted) (internal quotation marks omitted); see also Schwab, 560 U.S. at 793 ("If the trustee fails to object . . . the debtor will be entitled to exclude the full value of the asset.").

**B.      Rule 4003**

Under Rule 4003(c), a party objecting to a debtor's claim of exemptions "has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c). "Initially, this means the objecting party has the burden of production and the burden of persuasion." Elliott v. Weil (In re Elliott), 523 B.R. 188, 192 (B.A.P. 9th Cir. 2014) (citation omitted). "If the objecting party can produce evidence to rebut the exemption, the burden then shifts back to the debtor to come forward with evidence to demonstrate that the exemption is proper." In re Lerner, 611 B.R. 409, 416 (Bankr. D. Kan. 2019) (citations omitted).

Under Rule 4003(b), "a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Fed. R. Bankr. P. 4003(b)(1). "The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension." Id.

## II. The Rule 4003 Motion

### A. The Procedural Flaw

The starting point for our analysis is the Rule 4003 Motion, in which the Debtor asserted that the Trustee's objections to his Schedule C amendments were time-barred. A threshold problem is that the Debtor's argument, itself, comes late. Devoting a significant portion of its analysis to this issue, the bankruptcy court ruled that the Debtor waived his Rule 4003 argument because he "asserted it for the first time long after he amended his [first] schedule[d] exemption" and "litigated the challenge to his second amended exemption."

The bankruptcy court's concern regarding the Debtor's delay is well-founded. The record before us reflects that, as months elapsed after the conclusion of the first creditors' meeting in June 2017, the Debtor failed to present his Rule 4003 argument. His silence on this issue persisted during the litigation of his Second Amended Schedule C, the Joint Statement, and the Response to Objection to Third Amended Schedule C. The Debtor did not argue that the Trustee's failure to object to the First Amended Schedule C foreclosed her ability to object to his subsequent amendments to Schedule C until the filing of the Rule 4003 Motion on May 28, 2019. The Debtor waited until after the Trustee objected to the Fourth Amended Schedule C to assert that she should have opposed the First Amended Schedule C.

19

From the foregoing, it is clear not only that a significant amount of time passed but also that the Debtor had many opportunities to bring the Rule 4003 Motion—which makes that motion procedurally problematic. See United States v. Diana Shipping Servs., S.A., 985 F. Supp. 2d 719, 726 n.4 (E.D. Va. 2013) (stating "waiver occurs when a motion is not timely filed"); Haldeman v. Golden, CV No. 05-00810 DAE-KSC, 2007 WL 3238673, at *2 (D. Haw. Nov. 1, 2007) (stating "in general, failure to raise an issue in a timely manner results in waiver" and collecting cases). Even if it were not, however, insurmountable substantive hurdles would remain. We are mindful of the principle that courts prefer to decide cases on their merits rather than on the basis of procedural defects. See Zeitler v. Zeitler (In re Zeitler), 221 B.R. 934, 937 (B.A.P. 1st Cir. 1998) (discussing judicial policy favoring decisions on merits); see also United States v. Loya-Ramirez, 766 F. App'x 681, 685 (10th Cir. 2019) (acknowledging that appellate courts have discretion to reach waived argument); United States v. Pérez-Crespo, 557 F. App'x 6, 7 n.1 (1st Cir. 2014) (recognizing, in a criminal case, that waiver question may be "bypass[ed]" where underlying issue may be "easily resolved on the merits"). Indeed, the bankruptcy court also seemed cognizant of this principle, as it did not end its analysis with waiver or judicial estoppel principles but went on to analyze the merits of the Debtor's Rule 4003 argument. Accordingly, we examine the substance of the Debtor's argument presented in the Rule 4003 Motion that the Trustee's objections to his claimed exemption of the Fidelity Account were time-barred and conclude that his argument is unavailing for two primary reasons, as discussed below.

## B. The Substantive Flaws

### 1. The Trustee's Exemption Objections were Timely

First, under Rule 4003(b)(1), the filing of the Debtor's Second Amended Schedule C triggered a new objection deadline of 30 days after the amendment. See Fed. R. Bankr. P. 4003(b); In re Allen, 454 B.R. 894, 896 (Bankr. S.D. Fla. 2011). While courts are divided as to whether Rule 4003(b)(1) permits an objection to a claimed exemption unaffected by the filing of an amended Schedule C, see Nieves Guzmán v. Wiscovitch Rentas (In re Nieves Guzmán), 567 B.R. 854, 868 (B.A.P. 1st Cir. 2017), we need not decide this issue. As the bankruptcy court correctly observed, every time he amended Schedule C, the Debtor modified his claimed exemption in the Fidelity Account. Accordingly, under Rule 4003(b)(1), the Objection to the Second Amended Schedule C, as well as the Trustee's subsequent objections, were timely.

### 2. The First Amended Schedule C was too Vague to Constitute Notice

Second, the First Amended Schedule C was too vague to constitute notice of the claimed exemption of the Fidelity Account. While the Supreme Court instructs that a failure to promptly object to a claimed exemption precludes a subsequent challenge to the validity of the exemption, see Taylor, 503 U.S. at 643-44, this result does "not follow where the exemption claim was so ambiguous that potential objectors were not put on notice of what property was being claimed exempt." Moldo v. Clark (In re Clark), 266 B.R. 163, 169 (B.A.P. 9th Cir. 2001) (citing Hyman v. Plotkin (In re Hyman), 967 F.2d 1316, 1319 n.6 (9th Cir. 1992)). Courts have already rejected the argument that property claimed as exempt is "automatically" exempt under Taylor in the absence of a timely objection where the debtor's exemption claim was determined to be ambiguous. See id. at 168-69 (citation omitted); see also Helms v. Metro. Life Ins. Co. (In re O'Malley), 601 B.R. 629, 640 (Bankr. N.D. Ill. 2019) (rejecting the notion that the failure to

object to an exemption within 30 days of the initial creditors meeting is an "absolute" bar to challenging the validity of the exemption, ruling "the Taylor time bar does not apply" where the debtor failed to properly claim the exemption in the first place). Although "Chapter 7 trustees may not bring untimely objections to facially invalid exemptions, they are not tasked with clarifying every ambiguous exemption claimed by debtors." In re Hall, 453 B.R. 22, 30 (Bankr. D. Mass. 2011) (citing In re Cormier, 382 B.R. 377, 397 (Bankr. W.D. Mich. 2008)). As the First Circuit stated, "[n]othing in Taylor intimates that 'property of the estate' *not* plainly listed . . . *becomes exempt* by operation of law under section 522(l)." Mercer v. Monzack, 53 F.3d 1, 3 (1st Cir. 1995) (citations omitted).

As the bankruptcy court recognized in its bench decision, the Schwab Court instructs that a trustee is "entitled to evaluate the propriety of . . . claimed exemptions based on three, and only three, entries on . . . Schedule C: the description of the [property] in which [the debtor] claimed exempt interests; the Code provisions governing the claimed exemptions; and the amounts [the debtor] listed in the column titled 'value of claimed exemption.'" 560 U.S. at 785. Scrutiny of the three critical entries on the Debtor's First Amended Schedule C reveals that all three were deficient.

### (a) Description of the Property

First, with no specific mention of the Fidelity Account currently at issue, the Debtor's description of the property he sought to exempt on the First Amended Schedule C was vague. He made only a general reference to "Trust/support accts." and "Possible retirement accounts," with a cross-reference to lines 17 and 21 from Schedule A/B, respectively. On line 17, "Deposits of money," the Debtor indicated "unknown account values" and listed Bank of America and Merrill Lynch (with "[u]nknown account numbers") and Fidelity Trust (with several account

22

numbers). The Debtor also noted on line 17 that he was "unaware of possible other accounts." On line 21, for "Retirement accounts," the Debtor indicated: "Possible, please see trust info above . . . ." There is no actual description of the types of accounts. Additionally, on the First Amended Schedule A/B, the spaces allocated for the values of the accounts were left blank. This cannot possibly satisfy Schwab.

### (b) The Bankruptcy Code Provision

As for the second critical entry under Schwab—the Bankruptcy Code provision governing the claimed exemptions—the Debtor was equally vague. In this regard, Schedule C instructs debtors to fill in the "[s]pecific laws that allow exemption." Here, the Debtor indicated simply: "unknown, please advise (pro se) 11 [U.S.C. § 522(b)(2)]?" Section 522(b)(2), however, does not constitute a specific basis for exemption; rather, it permits states "to 'opt out' of the federal exemption scheme, thereby requiring their residents to exempt property of the estate under state, federal non-bankruptcy or local law only." In re Feliciano, 487 B.R. 47, 50 n.2 (Bankr. D. Mass. 2013) (citation omitted). "The duty lies with debtors to accurately and clearly state their claimed exemptions." In re Leach, 595 B.R. 841, 848 (Bankr. D. Idaho 2018). The Trustee "should not be forced to guess what . . . statute(s) . . . [the Debtor] might claim exemption under." In re Bauman, No. 11 B 32418, 2014 WL 816407, at *13 (Bankr. N.D. Ill. Mar. 4, 2014) (citation omitted) (internal quotation marks omitted). By failing to provide the legal basis of his claim of exemption in this manner, the Debtor failed to claim the exemption. See id.; see also In re Serrano Soto, No. 13-02084 ESL, 2013 WL 3779382, at *6 (Bankr. D.P.R. July 18, 2013) ("A debtor's claim of exemption without citing the specific statute serving as the basis for the exemption . . . is improper and insufficient.") (citation omitted).

23

### (c) The Value of the Debtor's Interest

Third, on his First Amended Schedule C, the Debtor impermissibly left blank the space provided for listing the value of his interest in these accounts.

In short, on his First Amended Schedule C, the Debtor failed to meet his burden of claiming his exemptions with sufficient specificity to trigger the Trustee's duty to object. While the Supreme Court acknowledged in Schwab that listing the value of a claimed exemption as "unknown" is a red flag to trustees that if they do not object, the whole of the asset might turn out to be exempt, 560 U.S. at 789 n.16 (citation omitted), this does not amount to license for debtors to leave the identity of the asset unclear, the value of the asset blank, and the statutory authority for the claimed exemption "unknown." Here, even reading the First Amended Schedule C together with the First Amended Schedule A/B fails to yield a clear picture of the identity and value of the assets the Debtor owned and those he sought to exempt. It is not even clear from this record whether the Debtor owned some or all of the accounts identified on his First Amended Schedule A/B and described as "trust/support accounts" and "retirement accounts" on his First Amended Schedule C. See In re Clark, 266 B.R. at 171 (holding an exemption claim that referred to property that did not exist and failed to refer to the property that did exist was not effective).

Thus, the Debtor's ambiguous exemption claim on the First Amended Schedule C invoked no duty to object and the Trustee's failure to object did not render the claimed exemptions automatically valid, despite the Debtor's assertions in the Rule 4003 Motion. Moreover, any ambiguities regarding the information, or lack thereof, in the Debtor's schedules must be construed against him, "as both the drafter of the documents and as the party most familiar with the information required by them." In re Pickering, 195 B.R. 759, 763 (Bankr. D.

24

Mont. 1996) (citation omitted).  Requiring the Trustee to divine the Debtor's intent to exempt a non-qualified deferred annuity worth $105,000 by merely listing "possible retirement accounts" and unspecified "Trust/support accts." would "undermine the predictability of the Bankruptcy Code, one of the Code's important goals."  Williams v. Biesiada, 498 B.R. 746, 756 (S.D. Tex. 2013) (citing Schwab, 560 U.S. at 789).[6]  As one court aptly stated, "[b]ecause the time to object [under Rule 4003(b)] is relatively short, . . . it is important that trustees . . . be able to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules."  In re Hyman, 967 F.2d at 1319 n.6.

We conclude from the above analysis that the Debtor could not prevail on the substance of the Rule 4003 Motion and we therefore **AFFIRM** the bankruptcy court's order sustaining the Trustee's objection to that motion.  Our examination thus advances to the question of whether the Debtor could succeed on the merits of the Fourth Amended Schedule C.[7]  For the reasons discussed below, we conclude that he could not.

III.    The Merits of the Debtor's Fourth Amended Schedule C

On the Fourth Amended Schedule C, the Debtor claimed an exemption in the Fidelity Account under three state statutes, R.I. Gen. Laws § 9-26-4(11), R.I. Gen. Laws § 9-26-4(15), and R.I. Gen. Laws § 9-26-4(16).  In his appellate brief and during oral argument, however, the Debtor made no effort to defend his claim of exemption under the Rhode Island statutes.  As a result, his argument that the Fidelity Account is exempt under those statutes is waived.

---

[6]  Nevertheless, a word of caution to trustees is warranted.  The safer practice is still to object to poorly stated exemption claims.  See In re Clark, 266 B.R. at 171.

[7]  Because the Fourth Amended Schedule C encompassed the Third Amended Schedule C, adding only a single Rhode Island statutory basis for exemption, our analysis focuses on the Fourth Amended Schedule C.

See United States v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011) (stating an appellant's failure to brief an issue waives it).

### A.    Section 522(b)(4)(B)(i) and 522(b)(4)(B)(ii)(II)

The Debtor also claimed an exemption under § 522(b)(4)(B)(i) and § 522(b)(4)(B)(ii)(II).  Section 522(b)(4), however, does not provide an independent basis for exemption.  Instead, it prescribes "two *ways* for a retirement fund to be exempt[.]"  In re Patrick, 411 B.R. 659, 664 (Bankr. C.D. Cal. 2008) (emphasis added).[8]  The plain language of § 522(b)(4) requires that statute to be read in conjunction with § 522(b)(3)(C).  See 11 U.S.C. § 522(b) (stating "[f]or purposes of paragraph (3)(C) . . . , the following shall apply").  Thus, §522(b)(4)(B)(i) and § 522(b)(4)(B)(ii)(II) cannot be understood in isolation.  The interaction of these sections with § 522(b)(3)(C) is critical.  Section 522(b)(3)(C) permits an individual debtor to exempt "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986."  11 U.S.C. § 522(b)(3)(C).

Here, the Debtor claimed exemptions under § 522(b)(4)(B)(i) and (ii)(II), but did not cite § 522(b)(3)(C), which provides the relevant exemption.  Because the Debtor did not state a claim of exemption under § 522(b)(3)(C), he is not entitled to exempt the funds in the Fidelity Account under that statute.  See In re Bauman, 2014 WL 816407, at *13 (stating debtor "did not claim the federal retirement fund exemption because he did not give notice on his Schedule C

---

[8]  Under § 522(b)(4)(A), retirement funds are presumed exempt if they are held "in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the petition . . . ."  11 U.S.C. § 522(b)(4)(A).  Section 522(b)(4)(B) "describes the circumstances under which monies held in a retirement fund may be exempted from the estate where a favorable determination letter has not been issued."  Agin v. Daniels (In re Daniels), 452 B.R. 335, 348 (Bankr. D. Mass. 2011); see also 11 U.S.C. § 522(b)(4).

that he was claiming it," where he failed to properly list that statute in the body of his Schedule C).  Perhaps by specifying exemptions under § 522(b)(4)(i) and (ii), the Debtor intended to invoke the retirement fund exemption in § 522(b)(3)(C), or, thought that by meeting the requirements of § 522(b)(4), the funds in the Fidelity Account must be *deemed* exempt under § 522(b)(3)(C).  But the Debtor never made such an argument and "exemption by implication is not enough."  Id. (citation omitted); see also Schwab, 560 U.S. at 790 n.17 (requiring debtors "to state their claimed exemptions accurately").

In its bench decision, the bankruptcy court acknowledged, but did not rule on, the Trustee's argument that the Debtor failed to claim an exemption under § 522(b)(3)(C).  Instead, the court went on to examine the validity of the Debtor's exemption under that section.  It appears that the court viewed the Debtor's claim of exemption under § 522(b)(4)(B)(i) and (ii)(II) as tantamount to a claim of exemption under § 522(b)(3)(C).  In any event, as discussed below, the Debtor could not prevail under § 522(b)(3)(C) even if he had effectively invoked it.

**B.** **Section 522(b)(3)(C)**

Section "522(b)(3)(C) requires that funds satisfy not one but two conditions in order to be exempt: the funds must be 'retirement funds,' and they must be held in a covered account"—i.e., in an account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.[9]  Clark, 573 U.S. at 131.  Here, the Debtor has never argued that the Fidelity Account falls within one of the enumerated sections of the Internal

---

[9]  "These sections of the Internal Revenue Code deal with pension, profit sharing and stock bonus plans; employee annuities; individual retirement accounts . . .; deferred compensation plans of state, local government and tax-exempt organizations; and certain trusts."  In re Lizardi Ortiz, 558 B.R. 25, 33 (Bankr. D.P.R. 2016) (quoting Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 522.09[12] (16th ed. 2015)).

27

Revenue Code. And, in any event, there is abundant support in the record for a conclusion that, as a non-qualified annuity, the Fidelity Account was not entitled to favorable tax treatment under the Internal Revenue Code sections specified in § 522(b)(3)(C). See In re Jolly, 567 B.R. 480, 484 (Bankr. M.D.N.C. 2017) (stating non-qualified annuities do not receive the favorable tax treatment of retirement plan); see also In re Crowl, 415 B.R. 849, 851 (Bankr. N.D. Okla. 2009) (same). Because both conditions articulated in § 522(b)(3)(C) must be satisfied under Clark, we need not address the remaining requirement—whether the funds are retirement funds. Lest there be any doubt, however, we note that it is unlikely that the Debtor could satisfy this requirement, either, as nothing in the record before us objectively establishes that the funds in the Fidelity Account were "set aside for the day [the Debtor] stops working," as required by the Supreme Court's interpretation of the term. Clark, 573 U.S. at 127. On this record, the Debtor could not establish that he is entitled to claim an exemption under § 522(b)(3)(C).

In short, we discern no error in the bankruptcy court's order sustaining the Trustee's Objection to Fourth Amended Schedule C. Contrary to the Debtor's assertion, his pro se status does not alter our analysis. See Aja v. Emigrant Funding Corp. (In re Aja), 442 B.R. 857, 861 (B.A.P. 1st Cir. 2011) (observing that pro se litigants are not "granted immunity" from compliance with procedural and substantive law). Our conclusion is also unaffected by the Debtor's charge that the bankruptcy court abused its discretion by relying on case law not cited by either party. Accordingly, we **AFFIRM** the order sustaining the Objection to Third Amended Schedule C and the Objection to Fourth Amended Schedule C.

## CONCLUSION

For the foregoing reasons, the Orders are **AFFIRMED**.